**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**February 4, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DAROWE JUNIOR JONES, a/k/a Darowe
Jones, Jr.,

    Defendant - Appellant.

No. 19-5022
(D.C. No. 4:18-CR-00128-CVE-1)
(N.D. Okla.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **LUCERO**, **BALDOCK**, and **MORITZ**, Circuit Judges.
_____

Darowe Jones appeals from his conviction for possessing a firearm in

furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A)(i)

and from the sentence imposed by the district court for that crime and other related

offenses.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

# I

On March 20, 2017, officers executed a search warrant at Jones' house in Tulsa. In the kitchen, they discovered approximately 116 grams of methamphetamine, 18 grams of cocaine, 1.5 grams of heroin, and some marijuana. They found most of the drugs concealed in the back of a cabinet, packaged for sale. A kitchen drawer contained smaller amounts of the drugs, digital scales, sandwich baggies, and scissors. A vacuum sealer sat on the counter.

The officers discovered $16,218 in cash at the house. In a shoe box in the master bedroom closet, they found some of the cash in stacks of $1, $5, and $10 bills. A headphone box in the same closet held stacks of $20 and $50 bills, and stacks of $100 bills were hidden inside two watch boxes that sat on a bedside table shelf in the master bedroom. On the same shelf, the officers found a loaded 9mm semi-automatic pistol.

On April 17, 2018, officers arrested Jones at his new house. A search turned up more drugs—in the kitchen, in the garage, and in one of the bedrooms—and another gun in Jones' upstairs bedroom. Officers did not report finding drugs or cash in Jones' bedroom with the gun.

At trial, an officer testified that based on his training and experience, the items seized in March 2017 were "indicative of narcotics distribution." He noted that drug dealers often keep firearms to protect their product and their drug proceeds. Based on his experience, the officer testified that the pistol's location, easily accessible,

next to the bed, next to the money, is "definitely indicative of an individual that sells narcotics and us[es] the pistol to protect himself and protect his product, as well."

Jones' co-conspirator, Cynthia Santagata, testified.  When asked whether Jones had used a "firearm in furtherance of drug trafficking crimes," Santagata responded, "I guess, yes."  On cross-examination, Ms. Santagata conceded that she did not want to testify but believed she had to be there in part to keep a plea deal.

A jury convicted Jones on eleven counts related to his drug-dealing activity, one count of destroying or removing property to prevent its seizure by the government, and two counts of being a felon in possession of a firearm.  Most relevant to this appeal, the jury further found Jones guilty of possessing the 9mm pistol officers seized from his bedside table in March 2017 in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).

Jones' presentence investigation report (PSR) calculated his offense level at 32 and recommended sentencing within the resulting guideline range of 211 to 248 months.  The government objected to the PSR because it did not include a two-level enhancement for Jones' alleged April 17, 2018, firearm possession or a four-level enhancement for Jones' alleged role as a leader of the drug-distribution conspiracy. The government contended that the PSR incorrectly concluded that no factors warranted an upward departure from the guideline range by disregarding Jones' possession of N-ethylpentylone, a synthetic form of Ecstasy.  In the alternative, it moved for an upward variance on the same facts.

Jones objected to the PSR's inclusion of drugs confiscated from his co-conspirators' residences in calculating his offense level. He filed a motion for a downward variance from the guideline range, arguing that a shorter sentence would adequately punish him and protect the public.

The district court overruled all objections to the PSR and denied the government's motion for an upward variance or departure. Similarly, the court denied Jones' motion for a downward variance, found that the PSR's recommended offense level "adequately yet conservatively reflects the seriousness of the instant offenses and [Jones'] relative culpability in the conspiracy," and sentenced Jones to the low end of the resulting guidelines range—i.e., 211 months.

Jones then filed this appeal. He argues that the evidence does not support a finding that he possessed the 9mm pistol "in furtherance of" his drug crimes as 18 U.S.C. § 924(c)(1)(A) requires. He also argues that the district court abused its discretion by imposing a substantively unreasonable sentence.

## II

## A

To convict Jones under 18 U.S.C. § 924(c)(1)(A), the government had to prove that he: (1) committed a "drug trafficking crime," "(2) possessed a firearm, and (3) possessed the firearm in furtherance of" the drug trafficking crime. United States v. Avery, 295 F.3d 1158, 1179 (10th Cir. 2002), abrogated on other grounds, United States v. O'Brien, 560 U.S. 218, 235 (2010).

"We review a challenge to the sufficiency of the evidence de novo, but in doing so we owe considerable deference to the jury's verdict." United States v. King, 632 F.3d 646, 650 (10th Cir. 2011) (alteration and quotation omitted). We consider "whether taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." Id. (quotation omitted). We will reverse a conviction for insufficient evidence only when "no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (quotation omitted).

Jones does not contest his conviction for possessing a firearm on March 20, 2017. Nor does he contest his convictions for conspiracy and possessing, with intent to distribute, methamphetamine, heroin, cocaine, and marijuana in the house where officers located the firearm. The only issue remaining is whether Jones possessed the firearm in furtherance of either the conspiracy or the substantive crimes of possession with intent to distribute.

As its plain language indicates, 18 U.S.C. § 924(c)(1)(A) does not punish possession of a firearm alone. The government must "show that the weapon furthered, promoted or advanced . . . a drug trafficking crime." Avery, 295 F.3d at 1175 (quotation omitted). This requires that the government "establish some nexus between the firearm[] and the underlying drug trafficking crime." United States v. Luke-Sanchez, 483 F.3d 703, 706 (10th Cir. 2007).

Because defendants will rarely admit they intended to possess a firearm in furtherance of a drug trafficking crime, intent "is generally proven through circumstantial evidence." United States v. Rogers, 556 F.3d 1130, 1140 (10th Cir. 2009). To determine intent circumstantially, we consider several factors:

> (1) the type of drug activity being conducted, (2) the accessibility of the firearm, (3) the type of firearm, (4) the legal status of the firearm, (5) whether the firearm is loaded, (6) the proximity of the firearm to drugs or drug profits, and (7) the time and circumstances under which the firearm is found.

United States v. Robinson, 435 F.3d 1244, 1251 (10th Cir. 2006).

Six of these factors weigh in favor of a conclusion that Jones possessed his firearm in furtherance of a drug trafficking crime. The drug activity being conducted included storing a cache of drugs with the intent to distribute—thereby suggesting a need to protect those valuable drugs from other criminals. In plain view on the bedside table, the gun lay readily accessible for that purpose. It was a handgun, a type of firearm "widely recognized as a tool of the drug dealers['] trade." United States v. Bunner, 134 F.3d 1000, 1006 (10th Cir. 1998). Jones concedes that he possessed the gun illegally and police recovered eight rounds of ammunition from its magazine. When officers discovered the gun, it sat inches from two boxes containing $100 bills that the jury could reasonably conclude were drug proceeds. And although Jones kept the firearm in the bedroom next to the drug money (whereas the drugs themselves were in the kitchen of the small house), the drugs were not so far removed in proximity as to negate the inference that possession of the gun was in furtherance of the drug crimes.

At trial an officer testified that the circumstances surrounding the gun were "indicative of an individual that sells narcotics and using [sic] the pistol to protect himself and protect his product, as well." And when Jones' co-conspirator was asked whether Jones used the gun in furtherance of his drug-dealing activity, she replied, "I guess, yes."

Jones first contends that this evidence is insufficient because the government did not prove that he carried a gun during drug transactions or that he performed drug transactions at his house. But Jones' conviction for knowingly using or maintaining his residence for the purpose of manufacturing, distributing, or using drugs undermines this argument. See 21 U.S.C. § 856(a)(1).

He argues that because the later search of his new house turned up another gun in his bedroom, the jury should have inferred that he kept a gun in his bedroom for protection and not in furtherance of his drug trafficking. The government aptly responds to this argument by noting that since the jury convicted Jones of using the new residence for the purpose of manufacturing, distributing or using drugs, the jury could just as reasonably have inferred that Jones made a habit of using firearms to protect his drug houses.

Jones points out that his co-conspirator's testimony was equivocal. While it appears that she gave the testimony reluctantly, Jones' co-conspirator testified that Jones used the gun in furtherance of his drug trafficking. Yet even if this testimony were discounted or ignored, a reasonable juror could have concluded that Jones

possessed the firearm in furtherance of his drug trafficking crimes based on the

remaining evidence presented.

**B**

Jones claims his sentence is substantively unreasonable. Substantive

reasonableness addresses "whether the length of the sentence is reasonable given all

the circumstances of the case in light of the factors set forth

in 18 U.S.C. § 3553(a)." United States v. Verdin-Garcia, 516 F.3d 884, 895

(10th Cir. 2008) (quotation omitted). "We review the substantive reasonableness of a

sentence for abuse of discretion." United States v. Chavez, 723 F.3d 1226, 1233

(10th Cir. 2013). Under the abuse-of-discretion standard, we will reverse a sentence

if it is "arbitrary, capricious, whimsical, or manifestly unreasonable." United States

v. Muñoz-Nava, 524 F.3d 1137, 1146 (10th Cir. 2008) (quotation omitted). "A

sentence within the correctly calculated Guidelines range is presumed to be

reasonable, [and] the burden is on the appellant to rebut the presumption." Verdin-

Garcia, 516 F.3d at 898 (citation omitted).

Jones concedes that the district court "correctly calculated the applicable

Guidelines range" and sentenced him to the low end of that range. He must therefore

rebut the presumption that his sentence is substantively reasonable. He first attempts

to do so by arguing the district court "inadequately considered the disparity between

his sentence and the significantly more lenient sentences imposed on his co-

defendants." Id. at 26. We have observed that "even if sentencing disparities among

co-defendants may be considered by district courts in the exercise of their sentencing

discretion, 18 U.S.C. § 3553(a)(6) requires a judge to take into account only disparities <u>nationwide</u> among defendants with similar records and Guideline calculations." <u>Verdin-Garcia</u>, 516 F.3d at 899 (citation omitted). "It is not reversible error for a sentencing court to adhere to this interpretation in its exercise of sentencing discretion." <u>Id.</u> The district court here took this approach, finding that "there are no factors present to an extent that separate [Jones] from the mine run of similarly situated defendants to warrant a downward variance."

Jones claims generally that a shorter sentence would "accomplish the sentencing goals of § 3553(a)(2)." But he does not grapple with the district court's consideration of the nature of his offenses, his three prior robbery convictions, and his history of substance abuse in reaching its conclusion that the sentence "will serve as an adequate deterrent to [Jones] as well as others, promote respect for the law, provide just punishment for the offense, and provide protection for the public." Nor does he articulate an argument that this finding was "arbitrary, capricious, whimsical, or manifestly unreasonable." <u>Muñoz-Nava</u>, 524 F.3d at 1146 (quotation omitted). He has therefore failed to rebut the presumption that his sentence is reasonable. <u>Cf.</u> <u>Verdin-Garcia</u>, 516 F.3d at 898.

## III

For the reasons stated above, we **AFFIRM**.

Entered for the Court


Carlos F. Lucero
Circuit Judge