## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

UNITED STATES OF AMERICA

      Plaintiff – Appellee,

v.

DAROWE JUNIOR JONES,

      Defendant – Appellant.

No. 19-5022

On Appeal from the United States District Court
for the Northern District of Oklahoma
The Honorable Claire V. Eagan
District Court Judge
D.C. No. 18-cr-00128-CVE-1

---

## APPELLANT'S OPENING BRIEF

---

Megan L. Hayes
Attorney at Law
910 Kearney Street
Laramie, WY 82070
Telephone: 307-760-6258
Email: mlhayes@wyoming.com

Attorney for Defendant-Appellant

## ORAL ARGUMENT IS NOT REQUESTED
## NATIVE PDF DOCUMENT IS ATTACHED

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... ii

STATEMENT OF RELATED CASES................................................... iv

TABLE OF AUTHORITIES....................................................................v

JURISDICTIONAL STATEMENT……..…………………………………… 1

STATEMENT OF THE ISSUES ............................................................1

    I.       Was there insufficient evidence that Mr. Jones possessed a firearm in furtherance of a drug trafficking crime to support his conviction, because he kept a pistol in the bedroom of his residence?

    II.     Is Mr. Jones's Sentence is Substantively Unreasonable because it is Substantially Longer than Necessary to Accomplish the Sentencing Goals found in 18 U.S.C. § 3553(a) and because the District Court Abused its Discretion in Denying Mr. Jones's Motion for a Downward Variance?

STATEMENT OF THE CASE AND FACTS .........................................1

SUMMARY OF THE ARGUMENT ....................................................15

ARGUMENT ......................................................................................16

    I.       There was insufficient evidence that Mr. Jones possessed a firearm in furtherance of a drug trafficking crime to support his conviction… 16

        A. At the close of the evidence, the district court denied Mr. Jones's motion for a judgment of acquittal…...............………............. 16
        B. This Court reviews *de novo* Mr. Jones's claim that the evidence at trial was insufficient to support his judgment of conviction........ 16
        C. There was insufficient evidence that Mr. Jones possessed a firearm in furtherance of his drug-trafficking activity because the

government failed to prove beyond a reasonable doubt that the firearm found in the master bedroom was connected to any drug trafficking activity…………………………………….……….. 17

II.    Mr. Jones's Sentence is Substantively Unreasonable because it is Substantially Longer than Necessary to Accomplish the Sentencing Goals found in 18 U.S.C. § 3553(a) and because the District Court Abused its Discretion in Denying Mr. Jones's Motion for a Downward Variance. …………………..……………..22

    A.    The district court abused its discretion by imposing a sentence that was manifestly unreasonable. …………………..……….22

    B.    Mr. Jones moved for a downward variance based on the factors set forth in 18 U.S.C. § 3553(a). ……………….……….. .23

    C.    Mr. Jones's Sentence is Substantively Unreasonable because it is Substantially Longer than Necessary to Accomplish the Sentencing Goals of 18 U.S.C. § 3553(a). …………………...24

        1.    The district court inadequately considered the disparity between Mr. Jones's sentence and those imposed on similarly situated, but less culpable, offenders………...26

        2.    Mr. Jones's sentence violates the parsimony principle. 26

CONCLUSION .................................................................................29

CERTIFICATE OF COMPLIANCE ....................................................30

CERTIFICATE OF SERVICE.............................................................31

CERTIFICATE OF DIGITAL SUBMISSIONS....................................31

ATTACHMENTS

Judgment in a Criminal Case

The Sentencing Project: Trends in U.S. Corrections, updated June 2019.

## STATEMENT OF RELATED CASES

There are no prior or related appeals.

# TABLE OF AUTHORITIES

**Cases**

*Gall v. United States*, 552 U.S. 38 (2007) …………………..………………..22, 24

*United States v. Barnes*, 890 F.3d 910 (10th Cir. 2018)…………………………………..23

*United States v. Basham*, 268 F.3d 1199 (10th Cir. 2001) …………………..……19

*United States v. Brooks,* 438 F.3d 1231 (10th Cir. 2006) …………………..……..19

*United States v. Brown,* 400 F.3d 1242 (10th Cir. 2005) …………………..……..17

*United States v. Chavez*, 723 F.3d 1226 (10th Cir. 2013). ……………………22, 23

*United States v. Conlan*, 500 F.3d 1167 (10th Cir. 2007) …………………..……25

*United States v. DeRusse*, 859 F.3d 1232 (10th Cir. 2017)…………………………….23

*United States v. Doddles*, 539 F.3d 1291 (10th Cir. 2008) …………………..……20

*United States v. Gantt*, 679 F.3d 1240 (10th Cir.),
   *cert. denied*, 133 S. Ct. 555 (2012) …………………..…………………22

*United States v. Hanzlicek,* 187 F.3d 1228 (10th Cir.1999). …………………..……16

*United States v. Iiland*, 254 F.3d 1264 (10th Cir. 2001) …………………17, 18, 19

*United States v. Jameson,* 478 F.3d 1204 (10th Cir. 2007) …………………..…...16

*United States v. King,* 623 F.3d 646 (10th Cir. 2011). …………………..……...16

*United States v. Lucero*, 747 F.3d 1242 (10th Cir. 2014) …………………..…… 25

*United States v. Luke-Sanchez,* 483 F.3d 703 (10th Cir. 2007) …………………...18

*United States v. Martinez–Barragan*, 545 F.3d 894 (10th Cir. 2008) ……………27

*United States v. Munoz–Nava*, 524 F.3d 1137 (10th Cir. 2008). …………………22

*United States v. Naramor*, 726 F.3d 1160 (10th Cir. 2013) …………………..…...22

*United States v. Pinson*, 542 F.3d 822 (10th Cir. 2008) …………………..……. 24

*United States v. Ramos-Arenas,* 596 F.3d 783 (10th Cir. 2010) …………………17

*United States v. Renteria*, 720 F.3d 1245 (10th Cir. 2013) ………………..…...20

*United States v. Reyes–Alfonso*, 653 F.3d 1137 (10th Cir.),
   *cert. denied*, 132 S.Ct. 828 (2011). ………………..…………………25

*United States v. Robinson,* 435 F.3d 1244 (10th Cir. 2006) …………………..18, 19

*United States v. Sayad*, 589 F.3d 1110 (10th Cir. 2009) ………………..…. .. 23

*United States v. Smart*, 518 F.3d 800 (10th Cir. 2008). …………………..……. . 25

*United States v. Torres–Duenas*, 461 F.3d 1178 (10th Cir.),
   *cert. denied*, 551 U.S. 1166 (2007). ………………..…………………...23

*United States v. Trotter,* 483 F.3d 694 (10th Cir. 2007) ………………..………19

**Statutes**
18 U.S.C. § 924(c)(1)(A)(i) ………………..……………………………..17-18

18 U.S.C. § 3231………………………………………………………….. 1

18 U.S.C. § 3553(a) ………………………………………………24-25, 26

18 U.S.C. § 3742(a) ……………………………………………………..1

28 U.S.C. § 1291 ……………………………………………………… 1

**Other**
H.R.Rep. No. 105-344 (1997) ……………………………………………18

https://www.thetrace.org/rounds/how-many-guns-do-americans-own/…………………21-22

Trends in U.S. Corrections, The Sentencing Project, updated June 2019,
https://sentencingproject.org/wp-content/uploads/2016/01/Trends-in-US-
Corrections.pdf. ……………………………………………………… 28

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over this case pursuant to 18 U.S.C. § 3231.  This Court has jurisdiction over the appeal of this case pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).  This is an appeal of a final judgment of the district court entered against Darowe Junior Jones, on March 1, 2019.  Mr. Jones filed a timely Notice of Appeal on March 7, 2019.  By order of the Court, the deadline for filing this Opening Brief is July 15, 2019.

## STATEMENT OF THE ISSUES

**I.**     **Was there insufficient evidence that Mr. Jones possessed a firearm in furtherance of a drug trafficking crime to support his conviction, because he kept a pistol in the bedroom of his residence?**

**II.**    **Is Mr. Jones's Sentence is Substantively Unreasonable because it is Substantially Longer than Necessary to Accomplish the Sentencing Goals found in 18 U.S.C. § 3553(a) and because the District Court Abused its Discretion in Denying Mr. Jones's Motion for a Downward Variance?**

## STATEMENT OF THE CASE AND FACTS

By indictment and superseding indictment, the grand jury charged Mr. Jones and three other co-defendants with 20 counts of federal criminal activity related to their alleged drug trafficking conspiracy in Tulsa, Oklahoma.  Indictment, docket no. 2, 6/4/18, Vol. 1, pp. 18-24; Superseding Indictment, docket no. 48, 8/8/18, Vol. 1, pp. 57-84.  The grand jury charged Mr. Jones with 15 of the 20 counts in the superseding indictment, specifically:

Counts 1 & 15:      18 U.S.C. §§ 922(g)(1) and 924(a)(2), that on March 20, 2017

and April 17, 2018, Mr. Jones was a felon in possession of a

firearm and ammunition;

Counts 2, 9 & 16:   21 U.S.C. §§ 846, 841(b)(1)(B)(i), 841(b)(1)(B)(viii)

841(b)(1)(C), and 841(b)(1)(D), that from December of 2016

until March 20, 2017, Mr. Jones and his then-girlfriend,

Cynthia Santagata, conspired with themselves and others

(Dannie Dill and Cherie Kelley on Count 9) to distribute

methamphetamine, heroin, cocaine and marijuana;

Count 3:            21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii), that on March 20,

2017, Mr. Jones and Ms. Santagata knowingly possessed, with

the intent to distribute, 50 grams or more of methamphetamine;

Counts 4 & 17:      21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(i) and (b)(1)(C), that on

March 20, 2017 and April 17, 2018, Mr. Jones and Ms.

Santagata possessed with the intent to distribute 100 grams or

more of heroin;

Count 5:            21 U.S.C. §§ 841(a)(1) and (b)(1)(C), that on March 20, 2017,

Mr. Jones and Ms. Santagata possessed with the intent to

distribute cocaine;

| | |
|---|---|
| Counts 6 & 18: | 21 U.S.C. §§ 841(a)(1) and (b)(1)(D), that on March 20, 2017 and April 17, 2018, Mr. Jones and Ms. Santagata possessed with the intent to distribute marijuana; |
| Count 7: | 18 U.S.C. § 924(c)(1)(A)(i), that on March 20, 2017, Mr. Jones knowingly possessed a firearm in furtherance of a drug trafficking crime; |
| Counts 8 & 19: | 21 U.S.C. § 856(a)(1), that from December of 2016 until March 20, 2017, and again from January 2018 until April 17, 2018, Mr. Jones and Ms. Santagata knowingly used and maintained a residence for the purpose of storing, distributing and using heroin, methamphetamine, cocaine, marijuana, and "MDMA" or "ecstasy;" |
| Count 20: | 18 U.S.C. § 2232(a), that Mr. Jones and alleged co-conspirator Dannie Dill, knowingly destroyed or removed property to prevent its seizure by the government. |

Superseding Indictment, docket no. 48, 8/8/18, Vol. 1, pp. 57-83. Mr. Jones's three

co-defendants, Dannie Dill, Cynthia Santagata, and Cherie Kelley, all entered

guilty pleas prior to Mr. Jones's trial.  PSR, Supplemental Vol. 3, p. 205, ¶¶ 6, 7,

and 8. Prior to Mr. Jones's sentencing hearing, Mr. Dill was sentenced to 120

months' imprisonment and Ms. Kelley was sentenced to 30 months' imprisonment.
*Id.* at 205, ¶¶ 6 and 7.

At the beginning of his trial, the court read to the jury the following

stipulations agreed to by the parties:

1)  That Mr. Jones is a convicted felon, having been convicted of a felony offense prior to March 20, 2017;

2)  That a Taurus nine millimeter semi-automatic handgun and eight rounds of ammunition were recovered by law enforcement at 7508 South 68th East Place, Tulsa, Oklahoma, on March 20, 2017, and a Smith & Wesson nine millimeter caliber pistol and 13 rounds of ammunition were recovered by law enforcement at 3236 South 140th East Avenue, Tulsa, Oklahoma, on April 17, 2018, and that these items were properly recovered and stored by the Tulsa Police Department and had traveled in interstate commerce;

3)  That all items recovered during the search of 7508 South 68th East Place, Tulsa, Oklahoma, on March 20, 2017, were properly recovered, transported and stored by law enforcement;

4)  That item number 2, six clear plastic baggies containing a white powder, item number 3, six clear baggies containing 575 DU multi-colored tablets, item number 4, the clear plastic bag containing a white crystal substance, item number 5, three clear plastic baggies containing a brown substance, were recovered during a search on March 20, 2017, properly stored by law enforcement, and properly retrieved and tested by the Tulsa Police Department chemist Jared Lieser who obtained the following results:
    Item number 2 tested positive for cocaine and weighed approximately 18 grams;
    Item number 3 tested positive for methamphetamine and weighed approximately 114 grams;
    Item number 4 tested positive for methamphetamine and weighed approximately 2 grams;
    Item number 5 tested positive for heroin and weighed approximately 1.5 grams.

5)  That all items recovered during the February 21, 2018, search of Dannie Dill and Cherie Kelley's residence located at 11864 East 61st Place,

4

Broken Arrow, Oklahoma, were properly recovered, transported and stored by law enforcement;

6) That on March 21, 2018, Tulsa Police Department Senior Forensic Chemist Jason McGinnis properly retrieved and tested various items relating to the search conducted on February 21, 2018, with the following results:

> Item number 3 weighed approximately 23 grams and tested positive for methamphetamine;
>
> Item number 4 weighed approximately .14, 14/100 grams, and tested positive for heroin;
>
> Item number 5 weighed approximately .44 grams, or 44/100 grams, and tested positive for methamphetamine;

7) That all items recovered during the April 17, 2018, search of Mr. Jones and Ms. Santagata's residence at 3236 South 140th East Avenue, Tulsa, Oklahoma, were properly recovered, transported and stored by the Tulsa Police Department;

8) That item number 2, plastic bags containing a dark brown substance, item number 4, tablets and tablet fragments, and item number 5 relating to a search conducted on April 17, 2018, were properly stored by law enforcement and properly retrieved and tested by Tulsa Police Department Chemistry Technical Leader Jared Lieser who obtained the following results:

> Item number 2 tested positive for heroin and weighed approximately 178 grams;
>
> Item number 4 tested positive for methamphetamine and weighed approximately 2 grams;

9) That all items recovered during the April 19, 2018, search of Dannie Dill and Cherie Kelley's residence located at 3317 South 144th East Avenue, Tulsa, Oklahoma, were properly recovered, transported, and stored by the Tulsa Police;

10) That item number 3, a crystalline substance; item number 4, a crystalline substance; item number 5, a plastic bag containing a crystalline substance; item number 6, a plastic container containing a dark brown sticky substance; item number 7, a plastic bag containing a dark brown sticky substance; and item number 8, a plastic bag containing a crystalline substance, recovered during a search on April 19, 2018, were properly stored by law enforcement and were properly retrieved and tested by Tulsa Police Department Senior Chemist Jason McGinnis who obtained the following results:

> Item number 3 tested positive for methamphetamine and weighed

approximately 0.2 grams, or 2/10 grams;
Item number 4 tested positive for methamphetamine and weighed approximately 33.5 grams;
Item number 5 tested positive for methamphetamine and weighed approximately 101 grams;
Item number 6 tested positive for heroin;
Item number 7 tested positive for heroin and weighed approximately 18.63 grams;
And item number 8 tested positive for methamphetamine and weighed approximately 0.26 grams, or 26/100 grams.

Trial Trans., 10/22/18, Supp. Vol. 2, pp. 172-77.

The government's evidence against Mr. Jones included testimony from law enforcement officials and co-conspirators who testified about four searches of Mr. Jones's and his co-conspirators' residences in 2017 and 2018, searches that resulted in law enforcement's confiscation of the illegal drugs described in the stipulations set forth above. Tulsa Police Department Officer Kevin Warne testified that on March 20, 2017, he and other officers executed a search warrant at 7508 South 68th East Place, Tulsa, Oklahoma. After knocking on the front door and announcing themselves, Mr. Jones opened the door, was detained and arrested.[1] Trial Trans., 10/22/18, Supp. Vol. 2, pp. 182-83. The residence consisted of a living room, kitchen, and a couple of bedrooms, all of which were searched. *Id*. at p. 184. On a shelf inside the closet in the master bedroom, officers found several shoe boxes and a headphone box. One shoe box contained $1, $5, and $10 bills; the headphone box contained $50 and $20 bills. *Id.* at pp. 187 and

---

[1] Mr. Jones posted bond and was released from custody. PSR, Supp. Vol. 3, p. 205, ¶ 9.

189. On the lower shelf of a lampstand next to the bed was a loaded pistol in plain view, which Officer Warne testified was typical of drug dealers who want to protect themselves, their product, or their money from robbers. *Id.* at p. 191. Officers also found a watch box and another small box on the shelf next to the pistol that contained $100 bills. *Id.* at p. 191. Officer Warne testified that the cash, in proximity to the pistol, was typical of drug dealing activity. *Id.* at p. 194. The total amount of cash found was $16,218. *Id.* at p. 213.

In the kitchen, officers found digital scales, a couple of boxes of vacuum-sealed bags, a bag sealer, plastic containers with multi-colored pills, a white powdery substance and a brown substance inside, and other bags containing drugs in various locations inside the kitchen. *Id.* at pp. 196-98, 201-202. Officer Warne opined that the amount of drugs found was consistent with distribution, not user, activity. *Id.* at p. 215. He further testified that the firearm found in the bedroom, "in combination with everything that I just described, finding it with it, easily accessible next to the bed, next to the money, easily concealable, a small pistol is definitely indicative of an individual that sells narcotics and using the pistol to protect himself and protect his product, as well." *Id.* at p. 216, ll.9-16. On cross-examination, Officer Warne conceded that many Oklahomans keep handguns by their beds for protection and that he was not aware if Mr. Jones's fingerprints were found on the gun. *Id.* at pp. 223 and 224-25.

7

Officers also confiscated two cell phones from which they were able to extract text messages between Mr. Jones and Ms. Santagata. One of those text messages referred to a "thump" or "burner," which Tulsa Police Officer Patrick Pryce opined was slang for "gun." *Id.* at p. 304. In the text message that Officer Pryce described to the jury, Ms. Santagata was explaining to Mr. Jones that she had taken the gun with her downtown because Mr. Jones wasn't around and she wanted it with her. *Id.*

Tulsa Police Department Supervisor Rusty Brown testified about the department's execution of a search warrant on February 21, 2018, at Dannie Dill's and Cherie Kelley's home, both of whom were arrested. *Id.* at p. 358. Police officers found plastic baggies with what looked like methamphetamine, digital scales with drug residue on them, and a car in the garage with a gun and ammunition inside. *Id.* at pp. 344-49. Officers recovered heroin and methamphetamine, in the amounts stipulated to by the parties at trial. *Id*. at p. 359.

On April 19, 2018, Tulsa Police officers executed a search warrant for a different residence, where they suspected Kelley and Dill were residing after bonding out of custody. In the closet of the master bedroom, officers found a gallon-size zip lock baggie containing a white powdery substance they suspected was methamphetamine; they also found heroin, digital scales, smaller baggies containing suspected methamphetamine, plastic baggies, a "meth pipe" and

syringes. *Id.* at pp. 363-69. They also found $600.00 in single dollar bills, hidden in a printer box in the garage and $496 in Cherie Kelley's purse. *Id.* at pp. 373-74 and 377. At Mr. Jones's trial, the parties stipulated to the specific quantities of drugs found during this search. Cherie Kelley was arrested but Dannie Dill was not at the residence when law enforcement executed the warrant. *Id.* at p. 376.

Co-defendant and co-conspirator Cynthia Santagata testified that prior to trial, she had pled guilty to certain counts in the indictment and was awaiting sentencing. *Id.* at p. 382. The government asked her a series of questions regarding the charges to which she had pled guilty, such as that she and Mr. Jones conspired to distribute methamphetamine, heroin, cocaine and marijuana. *Id.* at p. 384. The government showed her the signed plea agreement to refresh her recollection about admitting that she had sent text messages to Mr. Jones regarding their drug distribution activities, that drugs had been shipped from California, and that Mr. Jones had possessed a firearm from December of 2016 until March of 2017. *Id.* at p. 388-390. When asked if she knew whether and was it true that Mr. Jones had used that firearm in furtherance of a drug trafficking activity, Ms. Santagata responded, "I guess, yes." *Id.* at p. 390. When asked whether 100 grams of heroin had been kept at her residence on April 17, 2019, Ms. Santagata responded, "I guess, yes," to which the prosecutor stated, "Well, I need a 'yes' or a 'no.' Is that true?" Ms. Santagata then testified, "Yes." *Id.* at p. 391, ll.6-17.

On cross-examination, Ms. Santagata conceded that she didn't really want to be there testifying, but that she had entered into a plea agreement and knew she had to be there because she wanted to "keep that deal." *Id.* at p. 402. Defense counsel asked about several of her responses to the prosecutor's questions, when "you shook your head no, you said things like 'I guess so,' and it sounded like you weren't sure. Is that true?" Ms. Santagata responded, "Somewhat, yes." *Id.* at p. 401, ll.18-21. Defense counsel asked her again:

Q. Do you remember on several occasions responding to the prosecutor's questions with, "I guess so"?

A. Yes.

Q. And you remember telling him that you didn't know anything about any firearms?

A. Yes.

*Id.* at p. 402, ll.12-17.

Cherie Kelley also testified pursuant to her plea agreement. *Id.* at p. 405. Ms. Kelley, an admitted heroin addict, testified that she and her fiancé Dannie Dill purchased heroin and methamphetamine from Mr. Jones for personal use and distribution. *Id.* at p. 407. Ms. Kelley testified to the amounts of drugs they purchased from Mr. Jones, the prices they paid for those drugs, that Jones procured drugs from California using moneygrams sent from Walmart, and that on several occasions, drugs were mailed directly to Ms. Kelley's residence. *Id.* at p. 408-27.

10

Tulsa Police Officer Mike Cawiezell, who investigated Mr. Jones from February to April of 2018, also testified for the government. *Id.* at p. 447-50. Officer Cawiezell explained that a previous investigation had resulted in Mr. Jones's arrest on March 20, 2017, the first date that law enforcement executed a search warrant at his residence. After his arrest, Mr. Jones had posted bond, was awaiting trial, and was not in custody on April 17, 2018. *Id.* at 452.

Both Mr. Jones and Ms. Santagata were arrested on April 17, 2018, at or near their home. *Id.* at pp. 452-464. After arresting Mr. Jones and obtaining a search warrant, officers found a Smith and Wesson firearm and ammunition in a dresser drawer containing men's underwear in the upstairs master bedroom of Mr. Jones's and Ms. Santagata's residence. *Id.* at pp. 465-66, and 468. There was no testimony that officers found either drugs or money anywhere in the master bedroom. In a separate bedroom inside the residence, officers found a shoe box containing $185.00 and a plastic baggie with a small amount of marijuana. *Id.* at p. 469. Officer Cawiezell described finding marijuana downstairs inside the oven in the kitchen, heroin inside a deep freezer in the garage, and a small amount of methamphetamine. *Id.* at pp. 471-74. During cross-examination, Officer Cawiezell testified that no fingerprints were taken from the firearm found in the master bedroom upstairs. *Id.* at p. 527.

11

During both Mr. Dill's and Mr. Jones's respective detentions following their arrests, law enforcement officials reviewed several recorded telephone calls they made to each other from jail. *See* Testimony of Officer Cawiezell, describing calls from Dill (in custody) to Jones (not in custody) in February of 2018, *id.* at pp. 483-96. Officer Cawiezell also testified to several recorded telephone calls made by Mr. Jones after his arrest on April 17, 2018, instructing Dill (not then in custody after posting bond) to retrieve approximately $15,000 that was hidden in the kitchen,[2] money that officers had not found while searching Mr. Jones's residence. *Id.* at pp. 496-506 and 510. Officers determined that Dill retrieved $15,000.00 from Mr. Jones's residence and used most of that money to pay for a lawyer to represent Mr. Jones. *Id.* at pp. 507-510.

At the conclusion of the government's evidence, Mr. Jones moved for a judgment of acquittal pursuant to Rule 29, which the trial court denied. *Id.* at p. 527. The court then delivered jury instructions, one of which explained the elements of Count 7, that Mr. Jones possessed a firearm in furtherance of a drug trafficking crime. *Id.* at pp. 568-570; *see also* Jury Instructions, docket no. 132, Vol. 1, pp. 233-239. Part of that instruction specified that "[m]ere presence of a firearm at the scene is not enough to find possession in furtherance of a drug trafficking crime, because the firearm's presence may be coincidental or entirely

[2] *Id.* at p. 498, ll.5-7, and p. 595.

unrelated to the underlying crime." Jury Instructions, docket no. 132, Vol. 1, p. 238.

Following closing arguments, the jury found Mr. Jones guilty on all 15 counts. *Id.* at pp. 623-627. *See also* Jury Verdict Forms, docket no. 133, Vol. 1, pp. 288-293.

A Probation Officer prepared a Presentence Investigation Report on December 21, 2018, that she revised on January 3, 2019. PSR, Supp. Vol. 3, pp. 197-217.[3] The drug amounts contained in the first PSR corresponded to the amounts stipulated to at trial that were confiscated from Mr. Jones's residences on March 20, 2017 and April 17, 2018, resulting in a base offense level of 24. However, the revised PSR added the drug amounts confiscated during the February 21 and April 19, 2018 searches of Dannie Dill's and Cherie Kelley's residences, resulting in a base offense level of 28. *Id.* at p. 205, ¶ 10; and p. 206, ¶ 12; *see also* Defendant's objections to revised PSR, *id.* at p. 222, fn.1. Mr. Jones objected to the additional amounts because Ms. Kelley's trial testimony indicated that she and Dannie Dill had other drug suppliers and therefore the drugs confiscated at their homes should not be considered relevant conduct since those drugs were outside of

---

[3] The original or initial PSR from December 21, 2018, is not included in the record on appeal because according to the Probation Office, "There is no document maintained as the 'Original PSR'. If it is revised, the new revised document becomes **the** Presentence Report. We do not keep the various drafts. We only keep the official final report." Email to Megan Hayes from Stephanie Clark, Intake Clerk, U.S. District Court for the Northern District of Oklahoma, June 18, 2019, forwarding information from U.S. Probation Office.

their conspiracy with Mr. Jones. *Id.* at pp. 222-24. The government objected based on the PSR's failure to include two enhancements: one two-level enhancement for Mr. Jones's possession of a firearm on April 17, 2018, in furtherance of a drug-trafficking activity, and a four-level enhancement for being a leader/organizer of the four person conspiracy. *Id.* at pp. 218-21.[4]

Mr. Jones also filed a motion for a downward variance, based on the factors contained in 18 U.S.C. § 3553a. He argued that the advisory guideline sentence of 151-188 months' imprisonment, plus the mandatory 60 month consecutive sentence for violating 18 U.S.C. 924(c)(1)(A)(i), was more severe than warranted. Defendant's Motion for Downward Variance, docket no. 149, Vol. 1, pp. 338-340. He asserted that the advisory guideline range of 97-121 months, as calculated in the original PSR, was adequate punishment for his crimes. *Id.* at p. 339.

At the sentencing hearing, the court denied the government's Motion for an Upward Departure, denied the Defendant's Motion for a Downward Variance, and accepted the presentence report as its findings of fact. Trans., Sentencing Hearing, 2/27/19, Vol. 3, pp. 54 and 62-63. The court explained that it had considered the nature of the offense and Mr. Jones's criminal history and personal characteristics. *Id.* at p. 63-64. The court then sentenced Mr. Jones to imprisonment for 211

---

[4] The government also filed a Motion for an Upward Departure, based on Mr. Jones's possession of a synthetic form of Ecstasy, n-ethylpentylone, for which he had not been charged or prosecuted. Vol. 1, docket no. 153, pp. 516-20. And the government filed a sentencing memo in which it argued for application of the two enhancements described in its PSR objections. Government's Sentencing Memoranum [sic], docket no. 150.1, Vol. 1, pp. 345-61.

months: 120 months as to each of Counts One and Fifteen; 151 months as to each

of Counts Two, Three, Four, Five, Eight, Nine, Sixteen, Seventeen, Eighteen and

Nineteen; and 60 months as to each of Counts Six and Twenty, to run concurrently

each with the other, and a mandatory minimum of 60 months as to Court Seven, to

run consecutively to all other counts.  *Id.* at p. 65.

This appeal followed.

## SUMMARY OF THE ARGUMENT

This Court requires a nexus between criminal drug trafficking activity and a

defendant's possession of a firearm to sustain a conviction under 18 U.S.C. §

924(c)(1)(A).  Here, the government proved only that Mr. Jones kept a firearm in

his bedroom, presumably for protection, and did not prove that he ever used that

firearm in furtherance of any drug trafficking activity or that he had ever taken that

firearm out of his bedroom.

Mr. Jones's sentence is substantively unreasonable because it is significantly

longer than necessary to accomplish the sentencing goals of 18 U.S.C. § 3553(a)

and violates that statute's parsimony principle.  According to that principle, courts

must impose sentences that are sufficient, but not greater than necessary to satisfy

the purposes of criminal punishment.  Mr. Jones's sentence is unduly harsh and

severe and only perpetuates the problem of lengthy sentences that fall

disproportionately on men of color in our country.  For these reasons, his sentence is illegal because it is substantively unreasonable.

## ARGUMENT

I.     **There was insufficient evidence that Mr. Jones possessed a firearm in furtherance of a drug trafficking crime to support his conviction.**

    **A. At the close of the evidence, the district court denied Mr. Jones's motion for a judgment of acquittal.**

Mr. Jones moved to dismiss the case under Rule 29 on the basis of insufficient evidence, which the trial court denied.  Trial Trans., 10/24/18, Supp. Vol. 2, p. 537.

    **B. This Court reviews *de novo* Mr. Jones's claim that the evidence at trial was insufficient to find him guilty of possessing a firearm in furtherance of a drug trafficking crime.**

This Court reviews *de novo* claims that the evidence presented at trial was insufficient to support a conviction.  *United States v. King,* 623 F.3d 646, 650 (10th Cir. 2011).  This Court seeks to determine whether "'taking the evidence-both direct and circumstantial, together with the reasonable inferences to be drawn therefrom-in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt.'" *Id.* (citing *United States v. Jameson,* 478 F.3d 1204, 1208 (10th Cir.2007) which quoted *United States v. Hanzlicek,* 187 F.3d 1228, 1239 (10th Cir.1999)).  This Court will reverse a conviction for insufficient evidence only when "'no rational trier of fact could have

16

found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (citing *United States v. Ramos-Arenas,* 596 F.3d 783, 786 (10th Cir. 2010) which quoted *United States v. Brown,* 400 F.3d 1242, 1247 (10th Cir. 2005)).  *See also United States v. Iiland*, 254 F.3d 1264, 1274 (10th Cir. 2001) (reversing conviction for possessing firearm in furtherance of drug-trafficking crime for insufficient evidence that Mr. Iiland's possession furthered, promoted or advanced his illegal drug activity).

### C. There was insufficient evidence that Mr. Jones possessed a firearm in furtherance of drug trafficking activity because the government failed to prove beyond a reasonable doubt that the firearm found in the master bedroom was connected to any drug trafficking activity.

Mr. Jones was convicted of possessing a firearm in furtherance of a drug-trafficking activity, after law enforcement found a gun on a bottom shelf of a lampstand next to the bed in the master bedroom of his residence on March 20, 2017.  As argued below, the evidence at trial failed to show an essential element of the charged offense, namely that he possessed the firearm "in furtherance" of a drug-trafficking crime.

18 U.S.C. § 924(c)(1)(A)(i) imposes a five-year mandatory sentence for any person convicted of possessing a firearm "in furtherance of" any drug-trafficking crime.  A § 924(c) conviction requires "'the government to show that the weapon

17

furthered, promoted or advanced a drug trafficking crime.'" *United States v. Luke-Sanchez,* 483 F.3d 703, 706 (10th Cir. 2007) (quoting *United States v. Robinson,* 435 F.3d 1244, 1251 (10th Cir. 2006)).  This Court has acknowledged that the "mere presence of a firearm in an area where a criminal act occurs is not a sufficient basis for imposing [§ 924(c)(1)(A)'s] mandatory sentence." *United States v. Iiland*, 254 F.3d 1264, 1271 (10th Cir. 2001) (quoting H.R.Rep. No. 105-344, at 12 (1997)).[5] Therefore, the government must prove more than a drug-trafficker possessed a firearm: "the government [must] establish some nexus between the firearms and the underlying drug trafficking crime."  *Luke-Sanchez,* 483 F.3d 703, 706.

This Court has enumerated a list of factors relevant to assess whether the government has established the required nexus between the drug-trafficking offense and the firearm, including "the type of drug activity being conducted, the accessibility of the firearm, the type of firearm, the legal status of the firearm, whether the firearm is loaded, the proximity of the firearm to drugs or drug profits,

---

[5] According to the legislative history of 18 U.S.C. § 924(c),

"[t]he government must clearly show that a firearm was possessed to advance or promote the commission of the underlying offense. The mere presence of a firearm in an area where a criminal act occurs is not a sufficient basis for imposing this particular mandatory sentence. Rather, the government must illustrate through specific facts, which tie the defendant to the firearm, that the firearm was possessed to advance or promote the criminal activity."

H.R. Rep. No. 105-344, 1997 WL 668339, at 9 (1997).

and the time and circumstances under which the firearm is found." *United States v. Trotter,* 483 F.3d 694, 701 (10th Cir. 2007) (quoting *United States v. Basham,* 268 F.3d 1199, 1208 (10th Cir. 2001)) (internal quotation marks omitted), *judgment vacated on other grounds by* 552 U.S. 1090 (2008) and 552 U.S. 1091 (2008).

In *Iiland*, the evidence showed that Mr. Iiland "was involved in drug trafficking and owned a gun that was found along with scales in his apartment." 254 F.3d 1264, 1270. This Court vacated the defendant's § 924(c) conviction, concluding that "[t]here was no evidence that the gun and drugs were ever kept in the same place or that Mr. Iiland ever kept the gun accessible when conducting drug transactions," and therefore his possession was not "in furtherance" of his drug-trafficking crimes. 254 F.3d 1264, 1274.

Other cases have similarly required very close proximity between a firearm and illegal drugs or satisfaction of other relevant factors to affirm a § 924(c)(1)(A) conviction as being "in furtherance" of a drug trafficking crime. In *United States v. Brooks,* 438 F.3d 1231, 1238 (10th Cir. 2006), this court upheld the defendant's § 924(c)(1)(A) conviction because a "loaded revolver was found within ten feet of the recovered evidence of an active methamphetamine laboratory." Similarly, in *United States v. Robinson,* 435 F.3d 1244, 1251 (10th Cir. 2006), this Court affirmed a § 924(c)(1)(A) conviction because "the firearm was a fully loaded and chambered high-powered rifle easily within reach" and "in close proximity to drug

paraphernalia."  In *United States v. Renteria*, 720 F.3d 1245 (10th Cir. 2013), the Court affirmed a § 924(c)(1)(A) conviction after law enforcement found a gun in a bag belonging to the defendant that also contained methamphetamine, cutting agent, scales, and ammunition and the bag was found in a residence where multiple witnesses testified they purchased methamphetamine from the defendant.  Finally, in *United States v. Doddles*, 539 F.3d 1291, 1295 (10th Cir. 2008), the Court found that evidence showing the close proximity of multiple firearms to drugs and drug proceeds, Mr. Doddles and his fellow gang members carried guns during their drug-trafficking conspiracy, he and others used firearms to fight a rival gang, and expert testimony that the firearms and ammunition found in the bedroom were consistent with drug-related gang activity, was sufficient to support his conviction under § 924(c)(1)(A) for possessing a firearm in furtherance of drug-trafficking activity.

At Mr. Jones's trial, there was no evidence presented that he carried a gun during drug transactions or that he performed drug transactions at his residence. On March 20, 2017, police officers found a firearm in the master bedroom of his home, next to his bed and a large amount of cash.  However, Cynthia Santagata provided the only testimony that the firearm ever left the bedroom, when she testified that she took the gun downtown.  Additionally, when asked if she knew whether Mr. Jones had used that firearm in furtherance of a drug trafficking

activity, Ms. Santagata responded equivocally, "I guess, yes." The question presumed that she even understood what "in furtherance" meant, a term this Court has taken great lengths to define. On cross-examination, she conceded that she really didn't know anything about the firearms found by law enforcement.

The evidence used to support Mr. Jones's § 924(c) conviction was that the firearm was found on March 20, 2017, in the master bedroom in close proximity to drug proceeds. However, the firearm found on April 17, 2018, was also found in the master bedroom of the residence near only minimal cash, while $15,000 in cash was hidden not in close proximity to the firearm, but rather downstairs in the kitchen, along with other drugs seized that day. This Court has repeatedly cautioned that close proximity of a firearm to drugs or drug proceeds is insufficient evidence to support a § 9249(c) conviction and that the mere presence of a firearm in an area where a criminal act occurs is not a sufficient basis for imposing § 924(c)'s mandatory five-year consecutive sentence. The evidence at trial established that Mr. Jones, like other Oklahomans and hundreds of millions of Americans, kept a gun in his bedroom for protection.[6] That is insufficient evidence

---

[6] "There is no official count of how many guns Americans own. But the best available calculations make it clear that the number has grown by tens of millions in recent decades, leaving the United States ever more densely armed than other countries.

A June 2018 report from the Small Arms Survey estimates that American civilians own 393 million guns, both legally and otherwise, out of a worldwide total of 857 million firearms. That's up from 270 million civilian-owned guns domestically, and 650 million globally, in 2007, the last time the Swiss organization released an estimate."

to support his § 924(c) conviction.  He therefore asks this Court to vacate his

conviction under 18 U.S.C. § 924(c)(1)(A), and remand his case for resentencing

without the mandatory consecutive five-year sentence.

II.  **Mr. Jones's Sentence is Substantively Unreasonable because it is Substantially Longer than Necessary to Accomplish the Sentencing Goals found in 18 U.S.C. § 3553(a) and because the District Court Abused its Discretion in Denying Mr. Jones's Motion for a Downward Variance.**

A.  **The district court abused its discretion by imposing a sentence that was manifestly unreasonable.**

The substantive reasonableness of a sentence, like its procedural

reasonableness, is subject to review for abuse of discretion. *Gall v. United States*,

552 U.S. 38, 51 (2007); *United States v. Chavez*, 723 F.3d 1226, 1233 (10th Cir.

2013). Under the abuse-of-discretion standard, this Court will reverse a sentence

that is "arbitrary, capricious, whimsical, or manifestly unreasonable." *United

States v. Naramor*, 726 F.3d 1160, 1171-72 (10th Cir. 2013) (quoting *United States

v. Gantt*, 679 F.3d 1240, 1249 (10th Cir.), *cert. denied*, 133 S. Ct. 555 (2012));

*United States v. Munoz–Nava*, 524 F.3d 1137, 1146 (10th Cir. 2008).

"[S]ubstantive reasonableness review broadly looks to whether the district court

abused its discretion in weighing permissible § 3553(a) factors in light of the

---

https://www.thetrace.org/rounds/how-many-guns-do-americans-own/

22

'totality of the circumstances,'" *United States v. Sayad*, 589 F.3d 1110, 1116 (10th Cir. 2009) (quoting *Gall*, 552 U.S. at 51). A defendant need not object at the time of sentencing to an error that implicates the substantive reasonableness of a sentence. *United States v. Torres–Duenas*, 461 F.3d 1178, 1183 (10th Cir.), *cert. denied*, 551 U.S. 1166 (2007).

This Court presumes that a sentence within the properly calculated Guidelines range is reasonable. *Chavez*, 723 F.3d at 1233. The defendant bears the burden of rebutting this presumption in light of the 18 U.S.C. § 3553(a) factors. *Id.* As discussed below, the circumstances of this case rebut the presumption of reasonableness.

This Court reviews the denial to grant a motion for a downward variance from the recommended guidelines range for an abuse of discretion and specifically whether the district court abused its "*discretionary authority* to consider 'the nature and circumstances of the offense'" and selected "'a sentence sufficient, but not greater than necessary,' to comply with all of the purposes of sentencing." *United States v. Barnes*, 890 F.3d 910, 916 (10th Cir. 2018) (citing *United States v. DeRusse*, 859 F.3d 1232, 1237 (10th Cir. 2017) and quoting 18 U.S.C. § 3553(a)).

### B.    Mr. Jones moved for a downward variance based on the factors set forth in 18 U.S.C. § 3553(a).

Mr. Jones filed a Motion for a Downward Variance prior to his sentencing hearing.  Defendant's Motion for Downward Variance, docket no. 149, Vol. 1, pp.

23

338-340.  At sentencing, the district court denied the motion. Trans., Sentencing

Hearing, 2/27/19, Vol. 3, pp. 62-63.

### C.     Mr. Jones's Sentence is Substantively Unreasonable because it is Substantially Longer than Necessary to Accomplish the Sentencing Goals of 18 U.S.C. § 3553(a).

Appellate review for substantive reasonableness "continues to have an

important role to play and must not be regarded as a rubber stamp." *United States*

*v. Pinson*, 542 F.3d 822, 836 (10th Cir. 2008). In reviewing a sentence for

substantive reasonableness, this Court must weigh the totality of the

circumstances, including the extent of any variance from the Guidelines range.

*Gall*, 552 U.S. at 51. "The 'totality of the circumstances' substantive

reasonableness calculus demands that [circuit courts] . . . ensure that the sentence

caters to the individual circumstances of a defendant, yet retains a semblance of

consistency with similarly situated defendants." *United States v. Evans*, 526 F.3d

155, 167 (4th Cir. 2008) (Gregory, J., concurring).

In considering whether a defendant's sentence is substantively reasonable,

this Court examines the "reasonableness of the length of the sentence in light of all

the circumstances of the case and the factors set forth in 18 U.S.C. § 3553(a)."[7]

---

[7] Those statutory factors include: 1. The nature and circumstances of the offense and the history and characteristics of the defendant; 2. the need for a sentence to reflect the seriousness of the crime, deter future criminal conduct, prevent the defendant from committing more crimes, and provide rehabilitation; 3. the sentences that are legally available; 4. the Sentencing Guidelines; 5. the Sentencing Commission's policy statements; 6. the need to avoid

*Chavez*, 723 F.3d at 1233; *United States v. Reyes–Alfonso*, 653 F.3d 1137, 1145 (10th Cir.), *cert. denied*, 132 S.Ct. 828 (2011). Although a district court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," it must also consider the 18 U.S.C. § 3553(a) statutory factors—including the defendant's personal history, the nature of the offense, and various policy considerations—"to determine whether they support the sentence requested by a party." *United States v. Lucero*, 747 F.3d 1242, 1250 (10th Cir. 2014) (quoting *Gall*, 552 U.S. at 49-50).

"A challenge to the sufficiency of the § 3553(a) justifications relied on by the district court implicates the substantive reasonableness of the resulting sentence." *United States v. Smart*, 518 F.3d 800, 806 (10th Cir. 2008). A sentence is substantively unreasonable if "the length of [the] sentence was excessive given all the circumstances of the case in light of the factors set forth in [18 U.S.C.] § 3553(a)." *Naramor*, 726 F.3d at 1171 (quoting *Gantt*, 679 F.3d at 1249). *See also United States v. Conlan*, 500 F.3d 1167, 1169 (10th Cir. 2007) (same). As explained below, the 211 month prison term Mr. Jones received meets that standard. A substantively unreasonable sentence is illegal and must be set aside. *Gall*, 552 U.S. at 51.

The district court here correctly calculated the applicable Guidelines range.

---

unwarranted sentence disparities; and 7. the need for restitution. *See* 18 U.S.C. § 3553(a) (1–7).

However, it failed to weigh the § 3553(a) factors. For example, the court inadequately considered the disparity between his sentence and the significantly more lenient sentences imposed on his co-defendants, at least one of which was equally culpable, as well as the requirement to impose a sentence no greater than necessary to accomplish the statutory sentencing goals.

> 1. *The district court inadequately considered the disparity between Mr. Jones's sentence and those imposed on similarly situated, but less culpable, offenders.*

Under 18 U.S.C. § 3553(a)(6), courts must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Here, Mr. Jones's most culpable co-conspirator, Dannie Dill, was sentenced to 120 months imprisonment, even though he was a drug-trafficker in his own right, was a felon in possession of a firearm, and executed the effort to retrieve property from Mr. Jones's residence to prevent seizure by the government, following Jones's arrest on April 17, 2018. For this reason, Mr. Jones contends that the district court failed to avoid a significant and unwarranted sentencing disparity between him and his equally-culpable co-conspirator, Dannie Dill.

> 2. *Mr. Jones's sentence violates the parsimony principle.*

Under the parsimony principle of 18 U.S.C. § 3553(a), courts must impose a sentence "'sufficient, but not greater than necessary, to comply with the purposes'

of criminal punishment." *United States v. Martinez–Barragan*, 545 F.3d 894, 904 (10th Cir. 2008) (quoting 18 U.S.C. § 3553(a)). A sentence much lower than the one the district court imposed in this case would accomplish the sentencing goals of § 3553(a)(2). As Mr. Jones argued in his Motion for Downward Variance, the purposes of sentencing would best be accomplished by a far shorter period of incarceration combined with treatment for substance abuse while incarcerated. *See* Supp. Vol. 3, PSR, p. 214, ¶ 51.

Mr. Jones's nearly 18-year sentence is unreasonably long.  He will not be released from prison until he is almost 57 years old, making his sentence span nearly the entirety of his adult working life. His harsh sentence far exceeds the time necessary to accomplish the goals of sentencing, which include retribution, rehabilitation, deterrence, and incapacitation.

Despite increasing evidence that long prison sentences and large-scale incarceration is not an effective means of achieving public safety or lowering crime rates, there has been a dramatic increase in the length of prison sentences for non-violent drug offenders in the past three decades.  According to The Sentencing Project, "harsh sentencing laws such as mandatory minimums keep many people convicted of drug offenses in prison for longer periods of time: in 1986, people released after serving time for a federal drug offense had spent an average of 22 months in prison. By 2004, people convicted on federal drug offenses were

27

expected to serve almost three times that length: 62 months in prison. At the federal level, people incarcerated on a drug conviction make up nearly half the prison population." Trends in U.S. Corrections, The Sentencing Project, updated June 2019, pp. 2-3, https://sentencingproject.org/wp-content/uploads/2016/01/Trends-in-US-Corrections.pdf. In addition, "[m]ore than 60% of the people in prison today are people of color. Black men are six times as likely to be incarcerated as white men and Hispanic men are 2.7 times as likely. For black men in their thirties, about 1 in every 12 is in prison or jail on any given day." *Id.* at p. 5.

Mr. Jones, a black man arrested twice in his thirties, is now serving a lengthy prison sentence that far exceeds the time necessary to serve the four purposes of sentencing-- primarily because changes in our sentencing laws and policies rather than an increase in crime rates have driven federal courts to impose longer and longer prison sentences that fall disproportionately on men of color. For these reasons, Mr. Jones's 211-month sentence is substantively unreasonable because it is significantly longer than necessary to achieve the sentencing goals set forth in 18 U.S.C. § 3553a and because it violates the parsimony principle of that statute, namely that courts must impose sentences that are sufficient, but not longer than necessary to achieve the purposes of criminal punishment

In light of the circumstances discussed above and the pertinent § 3553(a)

factors, Mr. Jones has demonstrated that his 211-month sentence is more severe than necessary and has rebutted the presumption of reasonableness. Mr. Jones's sentence exceeds the bounds of permissible choice, given the facts, applicable law, and the reality of the ineffectiveness of harsh and severe sentences such as the one imposed on Mr. Jones. The advisory guideline range set forth in the original PSR of 97-121 months would be adequate to achieve the goals of sentencing for the crimes Mr. Jones committed and would be proportionate to the sentences imposed on similarly culpable defendants. Accordingly, this Court should find Mr. Jones's sentence to be substantively unreasonable and remand this case for resentencing.

## CONCLUSION

For the above reasons, Mr. Jones respectfully asks this Court to vacate his conviction under 18 U.S.C. § 924(c) for insufficient evidence and remand this case for resentencing for a more fair and just sentence that will achieve the purposes of 18 U.S.C. § 3553(a).

Dated this 8th day of July, 2019.

Respectfully submitted,

s/ Megan L. Hayes
Megan L. Hayes
Attorney at Law
910 Kearney Street
Laramie, WY  82070

Attorney for Defendant-Appellant.

## CERTIFICATE OF COMPLIANCE

As required by FED. R. APP. P. 32(A)(7)(B), I certify that this brief is proportionally spaced and contains 6,686 words.  I relied upon Microsoft® Office Word 2007 SP2 to calculate the word count.  I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

As required by 10TH CIR. R. 25.5, all required privacy redactions have been made.  As required by ECF User Manual, § II, Policies and Procedures for Filing Via ECF, hard copies to be submitted to the court are exact copies of the version submitted electronically.

s/  Megan L. Hayes

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of July, 2019, I served the foregoing APPELLANT'S OPENING BRIEF via CM/ECF addressed to all counsel of record.

s/  Megan L. Hayes

## CERTIFICATE OF DIGITAL SUBMISSIONS

I hereby certify that pursuant to this Court's Emergency General Order (Amended January 1, 2006) there are no required privacy redactions to be made to this document or its attachments, and that this document and its attachments have been scanned for viruses with Microsoft Securities Essentials (updated on June 1, 2019) and are free of viruses.

s/  Megan L. Hayes