CASE NO. 19-5022

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

---

UNITED STATES OF AMERICA,
Plaintiff/Appellee,

v.

DAROWE JUNIOR JONES,
Defendant/Appellant.

---

On Appeal from the United States District Court
for the Northern District of Oklahoma

The Honorable Claire V. Eagan, United States District Judge
Case 18-CR-128-CVE-1

---

**ANSWER BRIEF OF THE UNITED STATES**
Oral argument is not requested
There are no attachments to this brief

---

R. TRENT SHORES
UNITED STATES ATTORNEY
Northern District of Oklahoma
Thomas E. Duncombe, DC Bar # 1029476
Assistant United States Attorney
110 West Seventh Street, Suite 300
Tulsa, Oklahoma 74119-1013
918.382.2700
thomas.duncombe@usdoj.gov

September 6, 2019

# TABLE OF CONTENTS

Table of Authorities ................................................................................. iii

Statement of Prior or Related Appeals ........................................................ 1

Statement of Jurisdiction .......................................................................... 1

Issues Presented for Appeal ...................................................................... 1

Statement of the Case .............................................................................. 2

Police found Darowe Jones in his house with drugs, scales, baggies, over $16,000 in cash, and a loaded Taurus 9mm pistol ............................. 2

Police found evidence of drug trafficking at three additional homes linked to Mr. Jones. ................................................................................. 3

A grand jury charged Mr. Jones and his codefendants with federal firearm and drug charges relating to the four searches. ............................ 4

At trial, officers and Mr. Jones's codefendants provided additional context to the Taurus 9mm pistol. ............................................................ 6

Cherie Kelley identified Mr. Jones as the source of all the drugs found at her houses on February 21 and April 19, 2018. ........................... 9

The jury found Mr. Jones guilty on all counts. ............................................ 9

At sentencing, Mr. Jones disputed the amount of drugs calculated as relevant conduct. .................................................................................... 10

The trial court sentenced Mr. Jones to the low end of the guideline range ....................................................................................................... 13

Summary of the Argument ........................................................ 15

Argument ................................................................................... 17
I. Ample evidence allowed the jury to conclude that Mr. Jones
    possessed the Taurus pistol found next to drug proceeds in
    furtherance of a drug trafficking crime. ............................. 17
    A. Record Reference ............................................................ 17
    B. Standard of Review ........................................................ 17
    C. A rational jury could have concluded that Jones possessed
        the Taurus 9mm pistol in furtherance of drug trafficking crimes. 18

II. Mr. Jones's sentence, at the low end of the guideline range, was
    substantively reasonable, and the trial court did not abuse its
    discretion in declining to grant a downward variance. ................. 26
    A. Record Reference .......................................................... 26
    B. Standard of Review ....................................................... 27
    C. Mr. Jones's sentence was not arbitrary, capricious, whimsical,
        Or manifestly unreasonable. ........................................... 28
    D. The district court did not abuse its discretion in denying Mr.
        Jones's motion for a downward variance ............................ 31

Conclusion .............................................................................. 33

Statement Regarding Oral Argument ...................................... 34

Certificate of Compliance with Type-Volume Limit ................ 35

Certificate of Digital Submission .......................................... 35

Certificate of Service ............................................................ 35

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Gall v. United States*, 552 U.S. 38 (2007) .......................................... 29, 30

*Rita v. United States*, 551 U.S. 338 (2007) .............................................. 29

*United States v. Avery*, 295 F.3d 1158 (10th Cir. 2002) .............. 19, 21, 25

*United States v. Barnes*, 890 F.3d 910 (10th Cir. 2018) ......................... 29

*United States v. Basham*, 268 F.3d 1199 (10th Cir. 2001) .............. 20, 22

*United States v. Brown*, 400 F.3d 1242 (10th Cir. 2005) ........................ 18

*United States v. Conlan*, 500 F.3d 1167 (10th Cir.2007) ....................... 27

*United States v. Davis*, 437 F.3d 989 (10th Cir. 2006) ..................... 30, 31

*United States v. DeRusse*, 859 F.3d 1232 (10th Cir. 2017) ......... 27, 29, 33

*United States v. Gantt*, 679 F.3d 1240 (10th Cir. 2012) ........................ 27

*United States v. Haley*, 529 F.3d 1308 (10th Cir. 2008) ........................ 31

*United States v. Hien Van Tieu*, 279 F.3d 917 (10th Cir. 2002) ............. 18

*United States v. Huckins*, 529 F.3d 1312 (10th Cir. 2008) .............. 27, 33

*United States v. Iiland*, 254 F.3d 1264 (10th Cir. 2001) ................... 19, 24

*United States v. Jameson*, 478 F.3d 1204 (10th Cir. 2007) ................... 17

*United States v. King*, 632 F.3d 646 (10th Cir. 2011) ................. 17, 21, 23

*United States v. Kristl*, 437 F.3d 1050 (10th Cir. 2006) .................. 27, 28

*United States v. Luke-Sanchez*, 483 F.3d 703 (10th Cir. 2007) ............. 19

*United States v. Mullins*, 613 F.3d 1273 (10th Cir. 2010) ..................... 17

*United States v. Ramos-Arenas*, 596 F.3d 783 (10th Cir. 2010) ............ 18

*United States v. Rogers*, 556 F.3d 1130 (10th Cir. 2009) ........................ 20

*United States v. Robinson*, 435 F.3d 1244 (10th Cir. 2006) ................... 21

*United States v. Ruiz-Terrazas*, 477 F.3d 1196 (10th Cir. 2007) .......... 29

*United States v. Trotter*, 483 F.3d 694 (10th Cir. 2007) ................. 19, 20

*United States v. Verdin-Garcia*, 516 F.3d 884 (10th Cir. 2008) ............ 30

## STATUTES AND SENTENCING GUIDELINES

18 U.S.C. § 924(c)(1) ........................................................ *passim*

18 U.S.C. § 3231 ................................................................... 1

18 U.S.C. § 3553(a) ......................................................... *passim*

28 U.S.C. § 1291 .................................................................. 1

U.S.S.G. § 1B1.3(a) .............................................. 13, 26, 32, 33

U.S.S.G. § 2D1.1(b) .................................................... 10, 11

U.S.S.G. § 2D1.1(c) ......................................................... 10

iv

U.S.S.G. § 3B1.1 ............................................................................ 11, 12

U.S.S.G § 3C1.1 ................................................................................ 10

## FEDERAL RULES

Fed. R. App. P. 32 ............................................................................ 35

Fed. R. Crim. P. 29 .......................................................................... 17

## Statement of Prior or Related Appeals

There are no prior or related appeals.

## Statement of Jurisdiction

A federal grand jury in the Northern District of Oklahoma charged Darowe Junior Jones with federal firearm and drug crimes (R. Vol. I at 57); therefore, the district court had subject matter jurisdiction under 18 U.S.C. § 3231. On February 27, 2019, after a jury convicted Jones, the district court sentenced him to 211 months' imprisonment. (*Id*. at 288, 543). Jones filed a timely appeal on March 7, 2019. (*Id*. at 551). This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## Issues Presented for Appeal

Whether a rational jury could have found that Darowe Jones possessed a Taurus 9mm pistol in furtherance of a drug trafficking crime, where police found the loaded pistol inches away from drug proceeds, within arm's reach of Mr. Jones's bed, and steps from Mr. Jones's stash of narcotics packaged for sale, digital scales, baggies, and other tools of the drug trade.

Whether Mr. Jones's sentence was substantively unreasonable where the district court stated that it considered the 18 U.S.C. § 3553(a) factors and declined to grant a downward variance but sentenced Mr. Jones at the low end of the applicable guideline range.

## Statement of the Case

**Police found Darowe Jones in his house with drugs, scales, baggies, over $16,000 in cash, and a loaded Taurus 9mm pistol.**

On March 20, 2017, Tulsa Police Department narcotics officers executed a search warrant at Darowe Junior Jones's home in Tulsa. (Supp. R. Vol. II at 182). When they got to the house, Officer Patrick Pryce read Mr. Jones his *Miranda* rights and asked whether there was anything illegal inside that would get Jones into trouble. (*Id.* at 250-51). Mr. Jones said yes. (*Id.* at 251). Mr. Jones also admitted that he lived at the house, along with his girlfriend, Cynthia Santagata. (*Id.* at 250-51).

In Mr. Jones's kitchen, the officers found about 116 grams of methamphetamine, about 18 grams of cocaine, about 1.5 grams of heroin, and multiple small packages of marijuana. (*Id.* at 174, 205). They found most of the drugs concealed in a large Tupperware container in the back

2

of a kitchen cabinet, packaged for sale. (*Id.* at 197-200). They found
smaller amounts of the drugs in a kitchen drawer, along with digital
scales, sandwich baggies, and scissors. (*Id.* at 202-03). The marijuana
was in tubs and small baggies in a cabinet under the kitchen drawer. (*Id.*
at 205). A vacuum sealer sat on the kitchen counter. (*Id.* at 200-01).

Officers also found $16,218 in cash at the house. (*Id.* at 213). They
found some of it in stacks of $1, $5, and $10 bills in a shoebox in the
master bedroom closet. (*Id.* at 186-88). They found some of it in stacks of
$20 and $50 bills in a headphone box in the same closet. (*Id.* at 189-90).
They found the rest of the cash, in stacks of $100 bills, in the master
bedroom, hidden inside a watch box, on a lamp stand that served as a
bedside table. (*Id.* at 193-94).

On the same bedside table shelf as the stacks of $100 bills in the
watch box, officers found a loaded Taurus 9mm semi-automatic pistol.
(*Id.* at 172, 194-95). The officers arrested Mr. Jones on state drug and
firearm charges, and he posted bond shortly thereafter. (*Id.* at 452).

**Police found evidence of drug trafficking at three additional
homes linked to Mr. Jones.**

Tulsa Police later recovered evidence relevant to Mr. Jones at three

3

other search warrant locations. On February 21, 2018, officers searched a home in Broken Arrow, Oklahoma, where Mr. Jones's coconspirators Dannie Dill and Cherie Kelley lived. (*Id.* at 335, 356-58). There, officers recovered additional quantities of heroin and methamphetamine. (*Id.* at 344, 358-59). On April 19, 2018, officers searched another Tulsa house where Dill and Kelley lived, and they found additional quantities of heroin and methamphetamine at that house. (*Id.* at 362, 366-67). On April 17, 2018, officers searched another Tulsa home where Mr. Jones lived, and they found more heroin, a large quantity of marijuana, and a Smith & Wesson 9mm semi-automatic pistol. (*Id.* at 451, 465-66, 474).

**A grand jury charged Mr. Jones and his codefendants with federal firearm and drug charges relating to the four searches.**

A federal grand jury charged Mr. Jones, Santagata, Kelley, and Dill, in a 23-count superseding indictment related to the firearm and drug evidence found at the four homes. (R. Vol. I at 57). The grand jury charged Mr. Jones in 15 of the counts. (*Id.* at 57-82). Count 1 charged that Mr. Jones possessed the Taurus 9mm pistol after having been convicted of a felony. (*Id.* at 58). Count 2 charged that from December 2016 to March 2017 Mr. Jones and Santagata conspired to distribute and

4

to possess with intent to distribute methamphetamine, heroin, cocaine, and marijuana. (*Id.* at 59). Counts 3, 4, 5, and 6 charged Mr. Jones with possessing with intent to distribute methamphetamine; heroin; cocaine; and marijuana, respectively, on March 20, 2017. (*Id.* at 60-63). Count 7 charged that on March 20, 2017, Mr. Jones possessed the Taurus 9mm pistol in furtherance of drug trafficking crimes, specifically in furtherance of the crimes in Counts 2 through 6. (*Id.* at 64). Count 8 charged that from December 2016 to March 20, 2017, Mr. Jones maintained a premises for the purposes of using, manufacturing, or distributing drugs. (*Id.* at 65). Count 9 charged that from August 2017 to April 19, 2018, Mr. Jones conspired with Santagata, Dill, and Kelley to distribute heroin and methamphetamine. (*Id.* at 66).

Count 15 charged that on April 17, 2018, Mr. Jones possessed the Smith & Wesson 9mm pistol after having been convicted of a felony. (*Id.* at 73). Count 16 charged that from January 2018 to April 17, 2018, Mr. Jones and Santagata conspired to distribute heroin, marijuana, and ecstasy. (*Id.* at 75). Count 17 charged that on April 17, 2018, Mr. Jones possessed heroin with intent to distribute. (*Id.* at 76). Count 18 charged

5

that on April 17, 2018, Mr. Jones possessed marijuana with intent to distribute. (*Id.* at 77). Count 19 charged that from January 2018 to April 17, 2018, Mr. Jones maintained a premises for the purpose of using, manufacturing, or distributing drugs. (*Id.* at 78). Count 20 charged that Mr. Jones worked together with Dill to remove, destroy, or damage property so that officers could not take lawful possession of it. (*Id.* at 79).

In addition to charging Dill and Kelley with participating in the conspiracy in Count 9, the grand jury also charged Dill and Kelley with drug and firearms offenses related to the evidence police found at their houses on February 21 and April 19, 2018. (*Id.* at 67-72).

**At trial, officers and Mr. Jones's codefendants provided additional context to the Taurus 9mm pistol.**

At Mr. Jones's trial, Tulsa Police officers testified about each of the searches described above. With respect to the March 2017 search, Corporal Kevin Warne, an experienced narcotics officer and a sixteen-year TPD veteran, testified that based on his experience and training, the quantities of drugs, the way the drugs were packaged, and the presence of digital scales, sandwich baggies, scissors, and a vacuum sealer in the kitchen, were all consistent with drug dealing. (Supp. R.

Vol. II at 215-16).

He also testified about the sophisticated manner in which Mr. Jones had separated the drugs, concealing most of his supply in the back of a cabinet while keeping only smaller amounts in the "packaging area" in the drawer, where the baggies, scales, and scissors were kept. (*Id.* at 195-204). Corporal Warne said that dealers often separate their drugs like that to decrease the chances of losing their entire drug stash in a robbery. (*Id.* at 203-04). If a robber demands to know where the dealer's drugs are, the dealer can divert the robber from the large stash by directing him to the smaller stash. (*Id.* at 204). This diversified storage system told Corporal Warne that Jones was "on the higher rung of selling narcotics," either "a middle man or higher," rather than a "street level" dealer. (*Id.* at 203).

Corporal Warne testified that the large quantity of cash, and the manner in which it was stored and organized, was consistent with a drug dealer's behavior. (*Id.* at 189-90, 193-94). Officer Mike Cawiezell testified that drug dealers often "have a large amount of cash and they frequently do not store that money in a bank account . . . ." (*Id.* at 461). TPD

7

Financial Analyst Cheryl Compton testified that after reviewing Oklahoma employment records, she could find no record of any legitimate source of income for Mr. Jones since late 2015. (*Id.* at 443).

Corporal Warne testified that drug dealers often keep firearms to protect their product and their drug proceeds. (*Id.* at 190, 194). He also testified that a pistol was a good weapon for a drug dealer, rather than a longer gun, because a drug dealer could conceal a pistol easily during a drug transaction and access it quickly during a robbery. (*Id.* at 192).

Officer Pryce testified about text message conversations between Mr. Jones and his girlfriend, Ms. Santagata, from between December 2016 and March 2017. (*Id.* at 294). In the texts, Mr. Jones and Ms. Santagata referred to making "swerves"—sometimes spelled "swurve" in the messages—which Officer Pryce testified was a slang term for a drug transaction. (*Id.* at 296-97). These swerves involved various drugs, including cocaine ("tone"), and ecstasy ("bean"). (*Id.* at 295-301). In one text message exchange, Mr. Jones asked Santagata where she was and why she had the "thump." (*Id.* at 304). She responded that she took "the burner" with her because Mr. Jones wasn't around and she went

8

"downtown" and "wanted it with me." (*Id.* at 304-05). Officer Pryce
testified that "thump" and "burner" are both slang terms for gun. (*Id.* at
304).

**Cherie Kelley identified Mr. Jones as the source of all the drugs
found at her houses on February 21 and April 19, 2018.**

Cooperating codefendant Cherie Kelley testified that she agreed to
distribute heroin and methamphetamine with her boyfriend Dannie Dill,
Cynthia Santagata, and Mr. Jones. (*Id.* at 405). She testified that from
the late summer of 2017 until April 2018, she and Dill bought drugs to
distribute from Mr. Jones. (*Id.* at 407). Kelley further testified that, to
the extent officers found heroin or methamphetamine at her houses on
February 21 and April 19, 2018, that heroin and methamphetamine
would have come from Mr. Jones. (*Id.* at 426-27). She testified that at
those times neither she nor Dill was getting drugs to distribute from
anyone else. (*Id.* at 427).

**The jury found Mr. Jones guilty on all counts.**

At the conclusion of the trial, the jury convicted Mr. Jones on all 15
counts against him, including Count 7, which charged that he possessed
the Taurus 9mm pistol in furtherance of drug trafficking crimes, in

9

violation of 18 U.S.C. § 924(c)(1)(A)(i). (*Id.* at 623-28).

**At sentencing, Mr. Jones disputed the amount of drugs calculated as relevant conduct.**

The United States Probation Office prepared the Presentence Investigation Report (PSR). (Supp. R. Vol. III at 197). That report calculated a base offense level of 28 for the drug counts under U.S.S.G. § 2D1.1(c)(6), based on a determination that Mr. Jones was responsible for at least 265.29 grams of methamphetamine, at least 198.07 grams of heroin, at least 6.95 grams of cocaine, and at least 146.63 grams of marijuana. (*Id.* at 208).

The report added two points to the base offense level under U.S.S.G. § 2D1.1(b)(12) because Mr. Jones maintained a premises for the purpose of manufacturing or distributing a controlled substance. (*Id.*). The report added two additional points for obstruction of justice under U.S.S.G. § 3C1.1, cmt. (n. 4(D)), because Mr. Jones helped to remove, destroy, or damage property to prevent seizure, as charged in Count 20. (*Id.* at 208-09). The report calculated an adjusted offense level of 32. (*Id.* at 209).

Based on Mr. Jones's category III criminal history, the report calculated a guideline range of 151 to 188 months as to drug counts 2

through 5, 8, 9, and 16 through 19; a guideline sentence of 120 months as to felon-in-possession counts 1 and 15; a guideline sentence of 60 months as to Count 6 (possession of marijuana with intent to distribute) and Count 20 (destroying, damaging, or removing property to prevent seizure); and a guideline sentence of 60 months as to the § 924(c)(1)(A) charge in Count 7, to run consecutively to any other term of imprisonment. (*Id.* at 211, 215). Assuming all sentences except Count Seven ran concurrently with one another, Mr. Jones faced a total guidelines sentencing range of 211 to 248 months. (*Id.*).

The government objected to the PSR, arguing that the PSR incorrectly failed to apply an enhancement under U.S.S.G. § 2D1.1(b)(1) for the Smith & Wesson 9mm pistol Mr. Jones possessed on April 17, 2018. (*Id.* at 218-19). The government also argued that the PSR incorrectly failed to apply an enhancement under U.S.S.G. § 3B1.1 for the defendant's role as a leader/organizer in the various drug conspiracies. (*Id.* at 219-20). Specifically, the government argued that the evidence showed the defendant directed the activities of the other participants, was in charge of importing drugs into the Northern District of Oklahoma from

11

California, and directed coconspirators about things such as what do with drug shipments once they arrived from California, where in California to send money for the drugs, and what prices to charge when selling the drugs. (*Id.*).

Finally, the government argued that the PSR failed to note that an upward departure or upward variance was warranted based on the presence of 152.13 grams of N-ethylpentylone, a synthetic cathinone similar to ecstasy, but three times more potent, that was present in Jones's house on April 17, 2018, but was not accounted for in the guideline analysis. (*Id.* at 220-21).

In the government's sentencing memorandum, the government advanced the same arguments as it raised in its objections to the PSR. (R. Vol. I at 345). The government also moved for an upward departure under U.S.S.G. § 3B1.1, cmt. (n.2), in the event the Court disagreed that Mr. Jones was a leader/organizer or at very least a manager/supervisor. (*Id.* at 360). In a separate motion, the government moved for an upward departure because Mr. Jones's guidelines calculation failed to otherwise account for his possession of over 150 grams of N-ethylpentylone in the

same freezer where the heroin was found on April 17, 2018. (*Id.* at 516).

Mr. Jones objected to the PSR, arguing that his relevant conduct under U.S.S.G. § 1B1.3(a)(1)(B)(iii) should not have included the 18.77 grams of heroin and 160.26 grams of methamphetamine found at Dill's and Kelley's houses on February 21 and April 19, 2018. (R. Supp. Vol. III at 222). Mr. Jones also filed a motion for a downward variance, arguing that, for the same reasons as in his PSR objection, the court should vary down from the guideline range of 151 to 188 months on the drug counts to a range of 97 to 121 months. (R. Vol. I at 338).

**The trial court sentenced Mr. Jones to the low end of the guideline range.**

At sentencing, the trial court overruled Mr. Jones's objection to the PSR. (R. Vol. III at 53). The court relied on Cherie Kelley's testimony that Mr. Jones was the sole source of the drugs found at her and Dill's houses on February 21 and April 19, 2018, to reject Mr. Jones's relevant conduct contention. (*Id.* at 53, 58). The court also denied Jones's motion for a downward variance, stating: "there are no factors present to an extent that separate this defendant from the mine run of similarly situated defendants to warrant a downward variance." (*Id.* at 62-63). The

court noted for the record that "the probation office in this case did a very conservative estimate of drug quantities and did not convert dollar amounts into drug quantities, so I think it is very conservative." (*Id.* at 58).

Before imposing Mr. Jones's sentence, the district court recognized on the record that the United States Sentencing Guidelines are advisory and not mandatory. (*Id.* at 63). The court stated that it had considered the Sentencing Guidelines as well as all factors set forth in 18 U.S.C. § 3553(a) in imposing the sentence. (*Id.*). The court also stated that it considered Mr. Jones's criminal history and personal characteristics in determining an appropriate and reasonable sentence. (*Id.*).

The court noted that Mr. Jones was the supplier in a drug trafficking conspiracy, in which he was responsible for the possession with intent to distribute at least 198.07 grams of heroin, 6.95 grams of cocaine, 265.29 grams of methamphetamine, and 146.63 grams of marijuana. (*Id.*). The court also noted that he had possessed a firearm in furtherance of his drug trafficking activities. (*Id.*). The court noted that Mr. Jones was 39 years old and had three prior robbery convictions and a history of

14

substance abuse. (*Id.*). The court stated that it considered sentencing disparities among defendants in determining an appropriate sentence in the case. (*Id.*).

The court then imposed a sentence of 211 months' incarceration. (*Id.* at 64). That sentence consisted of 120 months as to firearm counts 1 and 15; 151 months as to drug counts 2, 3, 4, 5, 8, 9, 16, 17, 18 and 19; 60 months as to Count 6 (possession of marijuana with intent to distribute) and 20 (removing, destroying, or damaging property to prevent seizure), each to run concurrently with the other; and 60 months as to Count 7, the § 924(c)(1)(A) charge, to run consecutively to all other counts. (*Id.*). This timely appeal followed.

## Summary of the Argument

The district court did not err in finding the evidence sufficient to support Mr. Jones's conviction for possessing a firearm in furtherance of drug trafficking crimes under 18 U.S.C. § 924(c)(1)(A). Viewed in the light most favorable to the government, the evidence showed that Mr. Jones possessed the pistol illegally, that it was loaded, that he kept it on

a bedside table next to a large quantity of drug proceeds, and that he kept it in the same house as his drug stash and drug paraphernalia. The evidence further supported the inference that Mr. Jones kept the pistol in part for the purpose of taking it with him on drug deals. Finally, Mr. Jones's coconspirator, Ms. Santagata, testified that Mr. Jones possessed the pistol in furtherance of drug trafficking crimes.

The district court did not abuse its discretion in sentencing Mr. Jones at the low end of his guideline range. The district court based the sentence on the applicable sentencing guidelines and the 18 U.S.C. § 3553(a) factors, and Mr. Jones fails to demonstrate that the sentence was arbitrary, capricious, whimsical, or manifestly unreasonable. Similarly, the district court did not abuse its discretion in denying Mr. Jones's motion for a downward variance, where the motion was based on the erroneous premise that the PSR had overstated the drug amounts attributable to Mr. Jones as relevant conduct.

## Argument

### I. Ample evidence allowed the jury to conclude that Mr. Jones possessed the Taurus pistol found next to drug proceeds in furtherance of a drug trafficking crime.

#### A. Record Reference

After the United States rested, Mr. Jones moved for a judgment of acquittal under Fed. R. Crim. P. 29. (Supp. R. Vol. II at 537). The court denied the motion as to all counts, including Count 7, the § 924(c)(1)(A) count. (*Id.*). The jury convicted Mr. Jones on all counts. (*Id.* at 623-28).

#### B. Standard of Review

This Court reviews a challenge to the sufficiency of the evidence *de novo*, but with "considerable deference to the jury's verdict." *United States v. Mullins*, 613 F.3d 1273, 1280 (10th Cir. 2010). This Court "asks only 'whether taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt.'" *United States v. King*, 632 F.3d 646, 650 (10th Cir. 2011) (quoting *United States v. Jameson*, 478 F.3d 1204, 1208 (10th Cir. 2007) (additional citation omitted)). This

17

Court will not "weigh conflicting evidence or consider witness credibility, as that duty is delegated specifically to the jury." *United States v. Hien Van Tieu*, 279 F.3d 917, 921 (10th Cir. 2002). Reversal is warranted only "if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Ramos-Arenas*, 596 F.3d 783, 786 (10th Cir. 2010) (quoting *United States v. Brown*, 400 F.3d 1242, 1247 (10th Cir. 2005)).

### C. A rational jury could have concluded that Jones possessed the Taurus pistol in furtherance of drug trafficking crimes.

The district court determined correctly that the evidence was sufficient to establish the elements of 18 U.S.C. § 924(c)(1)(A). Mr. Jones does not challenge his conviction on Count 1, which charged him with possessing the Taurus 9mm pistol on March 20, 2017, after having been convicted of a felony. Nor does he challenge his convictions under Counts 3 through 6, which charged him with possessing the various drugs found at his house that same day with the intent to distribute them, or Count 2, which charged that during a period that included March 20, 2017, he conspired with Santagata to distribute illegal drugs. Mr. Jones thus concedes that he possessed the gun and, on the same day and in the same

18

house, committed drug trafficking crimes. Under those circumstances, "the only question is whether the government presented sufficient evidence to satisfy § 924(c)(1)'s 'in furtherance of' element." *United States v. Avery*, 295 F.3d 1158, 1179 (10th Cir. 2002).

In fact, the evidence in support of that element was overwhelming. The "in furtherance of" element requires only that the government show "some nexus between the firearm[] and the underlying drug trafficking crime." *United States v. Luke-Sanchez*, 483 F.3d 703, 706 (10th Cir. 2007). The "mere presence of a firearm in an area where a criminal act occurs is not a sufficient basis for imposing [§ 924(c)(1)(A)'s] mandatory sentence." *United States v. Iiland*, 254 F.3d 1264, 1271 (10th Cir. 2001).

To determine whether a sufficient nexus exists between a firearm and a drug trafficking crime, this Court considers a non-exhaustive list of factors. Those factors include "the type of drug activity being conducted, the accessibility of the firearm, the type of firearm, the legal status of the firearm, whether the firearm is loaded, the proximity of the firearm to drugs or drug profits, and the time and circumstances under which the firearm is found." *United States v. Trotter*, 483 F.3d 694, 701 (10th Cir.

2007) (quoting *United States v. Basham*, 268 F.3d 1199, 1208 (10th Cir. 2001)) (internal quotation marks omitted), *judgment vacated on other grounds by* 552 U.S. 1090 (2008), and 552 U.S. 1091 (2008). A defendant's intent to possess a firearm in furtherance of drug trafficking crimes is ordinarily proven through circumstantial evidence. *United States v. Rogers*, 556 F.3d 1130, 1140 (10th Cir. 2009).

Here, every *Trotter* factor weighs against Mr. Jones. The firearm was loaded, positioned inches from a large quantity of what the jury could reasonably conclude were drug proceeds,[1] within arm's reach of Mr. Jones's bed, in the house where Mr. Jones kept his drug stash and his drug distribution tools. *See Trotter*, 483 F.3d at 701. Mr. Jones was also a convicted felon, and thus he possessed the Taurus 9mm pistol illegally. *Id.*

Corporal Warne testified that drug dealers often arm themselves "to protect themselves or to protect their product and their money from getting robbed . . . ." (R. Supp. Vol. II at 191); *see United States v. King*,

---

[1] Mr. Jones concedes on appeal that the cash in the master bedroom consisted of drug proceeds. Appellant's Brief at 21.

632 F.3d 783, 786 (10th Cir. 2010) (noting that "firearms are frequently tools of the trade" for drug dealers). Further, Corporal Warne noted that the Taurus 9mm pistol was "easily accessible; it's right there next to the bed, so if [Mr. Jones] were to get raided or robbed, it would be there right next to him . . . ." (R. Supp. Vol. II at 191).

From these facts alone the jury could reasonably have inferred that Mr. Jones kept the Taurus 9mm pistol on the nightstand to protect his drugs and drug proceeds from potential intruders, which would further his drug trafficking activities. *See United States v. Robinson*, 435 F.3d 1244, 1251 (10th Cir. 2006) (affirming conviction where "the firearm was a fully loaded and chambered high-powered rifle easily within reach" and "in close proximity to drug paraphernalia"); *Avery*, 295 F.3d at 1181 (evidence was sufficient to support section 924(c)(1)(A) conviction where defendant kept firearms in his bedroom along with cocaine and "significant amounts of cash," in home from which defendant had sold cocaine).

In addition, the jury could reasonably have inferred that Jones intended to keep the Taurus 9mm pistol "available for use if needed

during a drug transaction." *Basham*, 268 F.3d at 1208. Corporal Warne testified that a pistol like Mr. Jones's was a useful weapon for a drug dealer to carry with him because, unlike a long gun, a pistol is "easily concealable, so you can keep it on your person without it being seen." (R. Supp. Vol. II at 191). The evidence showed that both Mr. Jones and his coconspirator Santagata regularly engaged in "swerves," meetings to conduct drug deals. (*Id.* at 296-97). In one text message exchange, Mr. Jones asked Santagata where the "thump" was, and Santagata explained that she took "burner" with her because she had gone out and wanted protection. (*Id.* at 304-05). Officer Pryce testified that both "burner" and "thump" are common slang for a firearm. (*Id.* at 304).

From these facts the jury could reasonably have inferred that Mr. Jones and Santagata occasionally took the Taurus 9mm pistol with them when they left to deal drugs. At a minimum, the jury could have inferred that Mr. Jones possessed the firearm with this additional purpose in mind. *See Basham*, 268 F.3d at 1208.

Finally, Santagata, who confessed to being Mr. Jones's coconspirator in distributing illegal drugs, testified that Mr. Jones possessed a firearm

in furtherance of drug trafficking crimes. (Supp. R. Vol. 1 at 390-91). As Mr. Jones's attorney reminded the jury on cross examination, Santagata *initially* said on direct that she did not know anything about whether Mr. Jones possessed a firearm from December 2016 to March 2017. (*Id.* at 390; 402). However, Santagata had then agreed that she had stated in her plea agreement that Mr. Jones possessed a firearm, and she had agreed that she had stated this fact because it was true. (*Id.* at 390-91).

Santagata had then also agreed that Mr. Jones's possession of the firearm was in furtherance of drug trafficking crimes. (*Id.* at 391). Mr. Jones did not object to this testimony. Nor did he ask Santagata on cross what she meant by "in furtherance of" or raise any question as to whether she understood that phrase. The jury could therefore reasonably have concluded that Santagata understood the phrase and that her understanding was in line with the definition in the jury instructions. *See King*, 632 F.3d at 650 (in reviewing for sufficiency of the evidence, this Court takes the evidence in the light most favorable to the government).

Contrary to Mr. Jones's suggestion, the evidence that he possessed the Taurus 9mm pistol in furtherance of drug trafficking crimes is far

23

stronger than the evidence in *Iiland*. In *Iiland*, the evidence showed only that the defendant was a drug dealer and that the police found a firearm in the defendant's apartment next to a set of digital scales. 254 F.3d at 1274. The defendant kept the drugs in a separate storage unit, several miles from where the gun was found, and the jury heard "no evidence that the gun and drugs were ever kept in the same place or that Mr. Iiland ever kept the gun accessible when conducting drug transactions." *Id.* By contrast, the jury here heard evidence that Mr. Jones kept the loaded Taurus 9mm pistol in the same house as his drugs and drug paraphernalia, reachable from his bed, and inches from drug proceeds.

Mr. Jones agrees that the evidence showed that the Taurus was found on March 20, 2017, in the master bedroom in close proximity to drug proceeds. (Appellant's Brief at 21). But, he argues, "the firearm found on April 17, 2018, was also found in the master bedroom of the residence near only minimal cash, while $15,000 in cash was hidden not in close proximity to the firearm, but rather downstairs in the kitchen, along with other drugs seized that day." (*Id*). Mr. Jones's argument on this score is unclear. The grand jury did not charge Mr. Jones with possessing

24

the Smith & Wesson pistol in furtherance of drug trafficking crimes, and thus the jury was not asked to consider that issue or to compare the strength of the evidence as to the two firearms. And the presence of the Smith & Wesson pistol on April 17, 2018, does not make it any less likely that Jones possessed the Taurus pistol in furtherance of drug trafficking crimes on March 20, 2017.

In fact, the presence of the Smith & Wesson pistol on April 17, 2018, contributes to, rather than diminishes, the evidence in support of the § 924(c)(1)(A) charge. From Mr. Jones's possession of the Smith & Wesson pistol on April 17, 2018, in another house where Mr. Jones kept large quantities of drugs and drug proceeds, the jury could have reasonably inferred that Mr. Jones routinely possessed firearms wherever he kept his drugs and drug proceeds, and that after police seized the Taurus in 2017, he obtained the Smith & Wesson as a replacement. This inference diminishes the likelihood that Mr. Jones's possession of the Taurus 9mm pistol on March 20, 2017, again in a house with drugs and drug proceeds, was mere coincidence. *See Avery*, 295 F.3d at 1175 (noting that the presence of the firearm cannot be the result of

accident or coincidence).

Considering the applicable factors and considering the evidence in the light most favorable to the government, sufficient evidence supported the jury's guilty verdict on Count 7. Thus, the trial court did not err in denying Mr. Jones's motion for judgment of acquittal as to Count 7, and this Court should affirm his conviction.

## II. Mr. Jones's sentence, at the low end of the guideline range, was substantively reasonable, and the trial court did not abuse its discretion in declining to grant a downward variance.

### A. Record Reference

Mr. Jones objected to the PSR, arguing that the heroin and methamphetamine found at Dill's and Kelley's houses was not relevant conduct as to him under U.S.S.G. § 1B1.3(a)(1)(B)(iii). (Supp. R. Vol. III at 222). Mr. Jones also filed a motion for a downward variance, arguing that, for the reasons outlined in his objections to the PSR, the court should vary down from the guideline range on the drug counts. (R. Vol. I at 338).

The trial court overruled Mr. Jones's objection to the PSR, denied Mr. Jones's motion for a downward variance, overruled the government's

objections to the PSR, denied the government's motion for an upward

departure or variance, and sentenced Jones to 211 months' incarceration,

the low end of his advisory guideline range. (R. Vol. III at 53).

### B. Standard of Review

The Tenth Circuit reviews the reasonableness of sentencing decisions

for abuse of discretion. *United States v. Huckins*, 529 F.3d 1312, 1317

(10th Cir. 2008). In reviewing for substantive reasonableness, this Court

determines "whether the length of the sentence is reasonable given all

the circumstances of the case in light of the factors set forth in 18 U.S.C.

§ 3553(a)." *United States v. Conlan*, 500 F.3d 1167, 1169 (10th Cir.2007).

This Court "will reverse only if the sentence imposed was arbitrary,

capricious, whimsical, or manifestly unreasonable." *United States v.*

*DeRusse*, 859 F.3d 1232, 1236 (10th Cir. 2017) (quoting *United States v.*

*Gantt*, 679 F.3d 1240, 1249 (10th Cir. 2012)). Additionally, this Court has

recognized that "a sentence that is properly calculated under the

Guidelines is entitled to a rebuttable presumption of reasonableness."

*United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006). This

rebuttable presumption is "a deferential standard." *Id.*

27

### C. *Mr. Jones's sentence was not arbitrary, capricious, whimsical, or manifestly unreasonable.*

Mr. Jones fails to rebut the presumption that his guidelines sentence was reasonable. *Kristl*, 437 F.3d at 1054. He concedes that the district court correctly calculated the applicable guideline range, and he thus concedes that his 211-month sentence fell within that range. (Appellant's Brief at 25). Other than averring generally that the district court "failed to weigh the § 3553(a) factors" (Appellant's Brief at 26), and that his "nearly 18-year sentence is unreasonably long" (*id.* at 27), Mr. Jones's only contention as to substantive unreasonableness is that the district court failed to consider the disparity in sentencing between himself and his codefendant Dannie Dill.

First, contrary to Mr. Jones's assertion, the district court stated on the record that it weighed "all the factors set forth in 18 U.S.C. [§] 3553(a) to reach an appropriate and reasonable sentence in this case," considering both the nature of the offense and the defendant's criminal history and personal characteristics. (R. Vol. III at 46). To this end, the district court noted that Mr. Jones was the supplier for the group, possessed a firearm, had three prior robbery convictions, and other factors. (*Id*). This Court

gives substantial deference to the district court's weighing of the §
3553(a) factors. *United States v. Barnes*, 890 F.3d 910, 916 (10th Cir.
2018). This is so because the "sentencing judge is in a superior position to
find facts and judge their import under § 3553(a) in the individual case."
*Gall v. United States*, 552 U.S. 38, 51 (2007).

This Court has held that "a specific discussion of Section 3553(a)
factors is not required for sentences falling within the ranges suggested
by the Guidelines." *United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1202
(10th Cir. 2007). "When a judge decides simply to apply the Guidelines to
a particular case, doing so will not necessarily require a lengthy
explanation. Circumstances may well make clear that the judge rests his
decision upon the Commission's own reasoning . . . ." *Rita v. United
States*, 551 U.S. 338, 356-57 (2007). Particularly because Mr. Jones
received a guideline sentence, he points to nothing in the district court's
weighing of the § 3553(a) factors that qualifies as "arbitrary, capricious,
whimsical, or manifestly unreasonable." *DeRusse*, 859 F.3d at 1236.

Second, the trial court was not required to eliminate sentencing
disparities between Mr. Jones and Dill. "[A] criminal defendant alleging

a disparity between his sentence and that of a codefendant is not entitled to relief from a sentence that is properly within the sentencing Guidelines and statutory requirements." *United States v. Davis*, 437 F.3d 989, 997 (10th Cir. 2006). While district courts may "consider the need to avoid unwarranted similarities among [codefendants] who [are] not similarly situated," *Gall*, 552 U.S. at 56, such consideration is not mandatory. Rather, "18 U.S.C. § 3553(a)(6) requires a judge to take into account only disparities nationwide among defendants with similar records and Guideline calculations." *United States v. Verdin-Garcia*, 516 F.3d 884, 889 (10th Cir. 2008). Here, the district court specifically stated that it had considered disparities among defendants in determining an appropriate sentence in the case. (R. Vol. III at 63).

Moreover, Dill and Mr. Jones were not similarly situated. *See Davis*, 437 F.3d at 997 ("[D]isparate sentences are allowed where the disparity is explicable by the facts on the record[.]" (internal quotation marks omitted)). Unlike Mr. Jones, Dill pled guilty prior to trial pursuant to a negotiated plea agreement. (R. Supp. Vol. II at 397). Dill's "decision to accept responsibility . . . does not create an unwarranted disparity under

section 3553(a)(6)." *United States v. Haley*, 529 F.3d 1308, 1312 (10th Cir.

2008). Additionally, as the court recognized, Jones was higher in the drug

distribution chain than Dill, being both Dill's and Kelley's supplier of

methamphetamine and heroin. (R. Vol. III at 53). Dill's 120-month

sentence does not render substantively unreasonable Mr. Jones's

lengthier sentence. *See Davis*, 437 F.3d at 997.

### D. *The district court did not abuse its discretion in denying Mr. Jones's motion for a downward variance*

The district court did not abuse its discretion in determining that

"there are no factors present to an extent that separate this defendant

from the mine run of similarly situated defendants to warrant a

downward variance." (R. Vol. III at 62). The trial court made a similar

finding in denying the government's motion for an upward variance. (*Id.*).

Mr. Jones's motion for a downward variance was premised on the same

argument that the trial court rejected in overruling Jones's objection to

the PSR—that the 160.26 grams of methamphetamine and 18.77 grams

of heroin found at Dill's and Kelley's homes on February 21 and April 19,

2018, were not relevant conduct as to Mr. Jones. But in overruling that

objection, the trial court relied on the uncontroverted testimony of Cherie

Kelley that, at the times relevant to the case, Mr. Jones was their only supplier. (Supp. R. Vol. 1 at 43).

The trial court stated:

> In the instant offense, Jones was the supplier of heroin and methamphetamine to Dill and Kelley. Kelley testified under oath at trial that the 120.26 grams of methamphetamine and 18.77 grams of heroin found on February 21, 2018, and April 19, 2018, were supplied by Jones[,] who was both Dill and Kelley's sole supplier at the time. Consistent with the jury findings, the court finds that Kelley was credible and her testimony was truthful.

(R. Vol. III at 52-53). The trial court further found that "the total offense level as determined by the revised presentence investigation report and the court's previous rulings on the parties' objections adequately yet conservatively reflects the seriousness of the instant offenses and the defendant's relative culpability . . . ." (*Id.* at 61).

Because the evidence showed that the drugs at Dill's and Kelley's houses were within the scope of the jointly undertaken criminal activity and reasonably foreseeable to Mr. Jones in connection with that criminal activity, the district court properly attributed the drugs at Dill's and Kelley's houses to Mr. Jones as relevant conduct. U.S.S.G. § 1B1.3(a)(1)(B)(iii). Further, because the court found that Mr. Jones

actually distributed the drugs that were found on February 21 and April 19, the drugs were clearly relevant conduct as to him under § 1B1.3(a)(1)(A) as well. U.S.S.G. § 1B1.3(a)(1)(A) (counting as relevant conduct all acts "committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant"). The motion for a downward variance thus rested on the incorrect reasoning that the offense level for the drug counts overstated Mr. Jones's criminal culpability.

Because Mr. Jones not only knew about but was the source of the drugs referenced in the motion for a downward variance, the PSR did not overstate Mr. Jones's relevant conduct. The district court thus did not abuse its discretion in denying the motion for a downward variance. *See DeRusse*, 859 F.3d at 1236; *Huckins*, 529 F.3d at 1317.

## Conclusion

For the reasons set forth above, the district court did not err in finding the evidence sufficient to support the jury's conclusion as to Count 7, and the district court did not abuse its discretion in considering the

sentencing factors under § 3553(a) and sentencing Mr. Jones at the low

end of the advisory guidelines range.


## Statement Regarding Oral Argument

The United States does not request oral argument.


Respectfully submitted,
R. TRENT SHORES
United States Attorney


 /s/ Thomas E. Duncombe
Thomas E. Duncombe, DC Bar # 1029476
Assistant United States Attorney
110 West 7th Street, Suite 300
Tulsa, Oklahoma 74119-1013
918.382.2700
thomas.duncombe@usdoj.gov

34

**Certificate of Compliance with Type-Volume Limit**

1.  This document complies with the type-volume limit of Fed. R. App. P. 32(g) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6637 words.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Schoolbook.

/s/ Thomas E. Duncombe
Thomas E. Duncombe
Assistant United States Attorney

**Certificate of Digital Submissions**

I certify that all required privacy redactions have been made, and, with the exception of those redactions, every document submitted in digital form or scanned PDF format is an exact copy of the written document filed with the clerk. I also certify that the digital submission has been scanned for viruses with the most recent version of a commercial virus-scanning program, McAfee Agent Version Number 5.0.6. I further certify that according to the commercial virus-scanning program, this digital submission is free of viruses.

/s/ Thomas E. Duncombe
Thomas E. Duncombe
Assistant United States Attorney

**Certificate of Service**

I certify that on September 6, 2019, I electronically transmitted the foregoing to the Clerk of the Court using the ECF System for filing, which will send notification of that filing to the following ECF registrant:
Megan L. Hayes (mlhayes@wyoming.com)
Counsel for Defendant/Appellant.

/s/ Herbert W. Wright, III
Herbert W. Wright, III
Paralegal Specialist